# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 03-3295

WILLIAM CANNON, JR.,

*Plaintiff-Appellant,*

v.

ODIE WASHINGTON, **Director,**
RONALD HAWS, RODNEY L. TALLY, **et al.,**

*Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Southern District of Illinois.
No. 98 C 447—**David R. Herndon**, *Judge.*

———————

SUBMITTED JULY 21, 2005[*]—DECIDED AUGUST 10, 2005

———————

Before BAUER, CUDAHY, and SYKES, *Circuit Judges.*

PER CURIAM. This protracted litigation arises out of three incidents that allegedly occurred in 1996 and 1998 in which Illinois inmate William Cannon, Jr., claims that prison

———————

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

guards severely beat him. Cannon originally filed suit in 1998 and amended his complaint in 2001, alleging in total that more than 50 defendants violated his rights under the Eighth and Fourteenth Amendments and a number of state laws. *See* 42 U.S.C. § 1983. The district court granted a default judgment against one defendant and awarded Cannon $1,000 in damages. The court also dismissed or granted summary judgment on all claims against the other defendants because, as relevant here, it found that Cannon failed to properly exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA") prior to filing suit. *See* 42 U.S.C. § 1997e(a). Cannon appeals and we affirm in part and vacate and remand in part.

Illinois officials transferred Cannon to the Centralia Correctional Center on June 12, 1996. Upon his arrival Centralia officials ordered Cannon to remove his clothes for a strip search and an anal cavity search. Cannon refused to submit to the rectal search, so several guards came to his cell and forcibly performed the procedure. Afterwards, Cannon claims he was taken to a segregation cell, beaten, and forcibly subjected to another rectal search. Cannon says that the next day he was taken into the shower by a group of officers and again ordered to strip naked and submit to an anal cavity search. Cannon refused, arguing that he had already been searched, and was again beaten and forcibly searched.

Later that day, June 13, Cannon was transferred to the Shawnee Correctional Center. Shawnee officials again ordered Cannon to submit to a rectal search. When he refused, Cannon claims he was taken into a shower room, beaten until he was semiconscious, and again forcibly searched. The next day, June 14, Cannon was again taken to the shower room and ordered to submit to yet another anal cavity search. When he again refused, Cannon claims six guards forcibly searched him. After the search Cannon was immediately transferred to the Menard Correctional Center.

Prison officials filed disciplinary reports against Cannon for the incidents of June 12-13 for disobeying orders, insolence, and assaulting an officer. A disciplinary board at Menard later found Cannon guilty of insolence and disobeying orders but not guilty of assault. He was sanctioned with a two-month demotion in credit-earning class and a transfer to a maximum security unit.

Cannon wrote an eight-page grievance complaining about the conduct of the officers at Centralia and Shawnee. Because he was housed at the time at Menard and his grievance concerned events at other institutions, he mailed the grievance to the Department of Corrections' ("DOC") Administrative Review Board ("ARB") in Springfield, as required by state regulations. *See* 20 ILL. ADMIN. CODE § 504.870(a)(3). He placed his grievance in the prison mail system on December 13, 1996; it was returned, however, on December 14 for insufficient postage. Cannon immediately re-sent it with proper postage. At the time the DOC required inmate grievances to be filed within six months of the incident (the time period has since been shortened to 60 days). *See* 20 ILL. ADMIN. CODE § 504.810(a) (1996). The ARB received the grievance on December 23 and denied it as untimely; the Board, however, told Cannon that it might reconsider if he submitted a copy of his original grievance along with a new grievance explaining the delay. Instead, Cannon wrote to the Director of the DOC, seeking reconsideration of his untimely grievance. Cannon stated that his grievance was delayed because Menard officials confiscated his personal papers on November 12 and did not return them until December 3. He said these papers contained the names of the guards who beat him and also contained other important facts he needed to draft his grievance. The ARB denied Cannon's request because he did not follow its instructions for resubmitting the grievance.

Two years later, in May 1998, Cannon allegedly was attacked at Menard by several guards who were unhappy

that he was preparing to file this lawsuit. Cannon says the guards beat him, confiscated his legal materials, and placed him in a new cell with a mentally unstable inmate who attacked him. In June 1998 Cannon filed suit based solely on the rectal searches and beatings in June 1996 at Centralia and Shawnee. He filed a grievance concerning the Menard attacks in November 1998, but it was denied on the merits. In March 2001 Cannon amended his complaint in the district court to add several claims and defendants based on the May 1998 events at Menard.

As relevant here, the district court determined that Cannon did not exhaust his administrative remedies as to the June 1996 incidents because his grievance was untimely. As to the May 1998 incident, the court held that he did not exhaust his administrative remedies before filing suit. The court reasoned that Cannon could not amend his complaint to add new claims relating to the later incident that had not been exhausted at the time he filed his original complaint. The court also declined to exercise supplemental jurisdiction over Cannon's state law claims. Cannon appeals.

Cannon first argues that he properly exhausted his administrative remedies with respect to the June 1996 incidents. He claims that the ARB should have deemed his grievance filed not on the date the Board received it, but instead on the date he first deposited it in the prison mail system. Cannon says that he lost all control over the grievance's delivery once he placed it in the prison mail system and that he should not be held responsible for delays in delivery. *See Houston v. Lack*, 487 U.S. 266, 273-74 (1988) (prisoner's notice of appeal from denial of petition for habeas corpus deemed filed when deposited in prison mail system because "pro se prisoners have no control over delays between the prison authorities' receipt of the notice and its filing").

To the extent Cannon relies on the mailbox rule, most of the claims asserted in his grievance would still be untimely. The incidents described in Cannon's grievance occurred on June 12 and June 13, 1996; he signed his grievance on December 13—exactly six months after the second incident but six months and one day after the first. Thus, the grievance was untimely as to the events of June 12. It was also untimely as to the events of June 13 because Cannon's grievance was returned to him for insufficient postage and he did not properly mail it until December 14, which was unquestionably one day too late. *See United States v. Craig*, 368 F.3d 738, 740 (7th Cir. 2004) (noting that mailbox rule in FED. R. APP. P. 4(c)(1) requires prisoner to submit affidavit stating he affixed sufficient postage).

Cannon also argues that his grievance was timely with respect to a claim that the guards at Centralia falsely charged him with assault in an effort to justify their attack on him. Cannon received notice of the disciplinary charge on June 14 and mailed his grievance exactly six months later. He asserts that he could not have filed a grievance until he was acquitted of that charge, which happened on July 18. But Illinois at the time required an inmate to submit a grievance within six months of "the discovery of the incident, occurrence, or problem that gives rise to the grievance." 20 ILL. ADMIN. CODE § 504.810(a) (1996). Because Cannon discovered that an allegedly false disciplinary charge had been filed against him on June 14, he was required to file a grievance by December 14. The same is true of the alleged forced search at Shawnee on June 14.

Cannon argues that he *did* file his grievance on December 14 because that is when he mailed it. The ARB deemed it untimely, either because it construed the claim to be intertwined with the June 12-13 incidents or, alternatively, because it did not receive the grievance until December 23. Regardless, the ARB accepts late grievances if the prisoner demonstrates "good cause" for the delay. *Riccardo v.*

*Rausch*, 375 F.3d 521, 524 (7th Cir. 2004); *Dixon v. Page*, 291 F.3d 485, 489 (7th Cir. 2002); 20 ILL. ADMIN. CODE § 504.810(a). The ARB invited Cannon to seek reconsideration of his untimely grievance so long as he explained the delay on an official form and attached a copy of the original grievance. Instead, Cannon wrote a letter to the DOC Director asking him to excuse the delay. This response ignored both of the ARB's instructions concerning the form of his response. By failing to take advantage of the procedure offered by the ARB for reconsidering the grievance, Cannon failed to exhaust his administrative remedies with respect to the false discipline claim. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) (prisoner must file complaints and appeals "in the place, and at the time, the prison's administrative rules require").

Cannon also argues that he could not have filed his grievance regarding the incidents at Centralia and Shawnee earlier than he did because guards at Menard confiscated all of his legal papers on November 12, 1996, and did not return them until December 3. He claims that these papers contained the names of the officers involved and important details about the incidents. But Illinois has not specified any particular level of detail required for inmate grievances, and we have held that a grievance is sufficient so long as it "object[s] intelligently to some asserted shortcoming." *Riccardo*, 375 F.3d at 524; *see also Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). The confiscated materials may have allowed Cannon to craft a more detailed grievance, but they were not necessary in order for him to alert the ARB to the general nature of his concerns arising out of the June 12-13 incidents. The confiscation of his materials did not excuse his noncompliance with the six-month deadline.

Cannon's last argument with respect to the June 12-13 incidents is that no administrative remedies were available

to him because he sought monetary damages and Illinois' grievance system lacks any provision to award monetary damages. This argument has been rejected repeatedly, and we need not address it further. *See Booth v. Churner*, 532 U.S. 731, 735 (2001); *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 537 (7th Cir. 1999).

Cannon next argues that the district court erred by dismissing his claims arising out of the alleged May 1998 attack at Menard on the ground that he did not exhaust his administrative remedies. We first note our awareness of conflicting decisions issued by our sister circuits as to whether the PLRA permits a prisoner to proceed on exhausted claims when his complaint also raises unexhausted claims. The Second Circuit has held that a district court may consider those claims a prisoner has exhausted even though it must dismiss those claims that are not exhausted. *See Ortiz v. McBride*, 380 F.3d 649, 655-63 (2d Cir. 2004). Three other circuits have adopted a "total exhaustion" rule that requires a district court to dismiss a prisoner's suit in its entirety if it raises any unexhausted claim. *See Bey v. Johnson*, 407 F.3d 801, 805-09 (6th Cir. 2005); *Ross v. County of Bernalillo*, 365 F.3d 1181, 1188-90 (10th Cir. 2004); *Kozohorsky v. Harmon*, 332 F.3d 1141, 1144 (8th Cir. 2003). The defendants here have not advanced a "total exhaustion" argument, and we thus do not consider the issue.

The district court dismissed the claims relating to the 1998 incident at Menard because Cannon failed to exhaust his administrative remedies on those claims before filing his original complaint. The court correctly noted that a prisoner may not file a lawsuit before exhausting his administrative remedies, even if he exhausts those remedies while the litigation is pending. *See Perez*, 182 F.3d at 535. As we have previously observed, this exhaustion requirement is designed to alert prison officials to perceived problems and to enable them to take corrective action without first

incurring the hassle and expense of litigation. *See Riccardo*, 375 F.3d at 524; *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004); *McCoy v. Gilbert*, 270 F.3d 503, 510 (7th Cir. 2002). Permitting a prisoner to sue first and then ask the prison to address issues that are now the subject of pending litigation defeats the purpose of the PLRA's exhaustion requirement.

But Cannon's 1998 grievance concerning the alleged attack at Menard gave prison officials precisely the type of opportunity to address his complaints that the PLRA contemplates. The sole objective of § 1997e(a) is to permit the prison's administrative process to run its course before litigation begins. *See Ford*, 362 F.3d at 399. Cannon's November 1998 grievance apprised prison officials of the alleged attack at Menard, and he did not hale those defendants into court until he had pursued all of the administrative remedies available to him. That he raised these claims by amending his complaint in an already pending case rather than initiating an entirely new proceeding is irrelevant to the objectives of § 1997e(a).

We do not mean to imply that the district court was required to accept Cannon's amended complaint adding the allegations about the alleged 1998 attack. Cannon sought leave to file an amended complaint in March 2001, almost three years after he filed his original complaint and long after the defendants filed their answer. Once a responsive pleading is filed, a plaintiff may not amend his complaint without leave of the court or consent of the adverse party or parties. *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792 (7th Cir. 2004); FED. R. APP. P. 15(a). A district court should freely grant a plaintiff leave to amend but may deny leave for a number of reasons, including that the amendment was unduly delayed, made in bad faith, or would cause undue prejudice to a defendant. *Dubicz*, 377 F.3d at 792. Cannon's new claims were raised three years after the alleged events that gave rise to them and were directed

primarily against defendants who were not parties to his original lawsuit. Perhaps the district court could have denied Cannon leave to add the claims arising out of the Menard incident as unduly delayed or as a bad faith attempt to avoid paying a new filing fee by adding unrelated claims to his original lawsuit instead of initiating a new action. But the district court accepted the amended complaint, and it erred by holding that Cannon did not exhaust his administrative remedies with respect to the 1998 incident.

Lastly, Cannon argues that the district court erred when it vacated what he says were default judgments against three defendants: Curtis Rueter, Michael Turner, and Judson Childs. But Cannon misapprehends the record; the court never entered default judgments against these three defendants. His confusion may be related to an improperly titled "Motion to Vacate Default Judgment" that the Attorney General filed on behalf of each defendant in response to Cannon's motion for default judgments. But the district court denied Cannon's motion as to these three defendants and permitted each defendant to move for summary judgment.

In sum, the district court's dismissal of Cannon's claims arising out of the May 1998 incident at Menard is VACATED, and this matter is REMANDED for further proceedings. In all other respects the judgment of the district court is AFFIRMED.

**A true Copy:**

     **Teste:**

              _____

              *Clerk of the United States Court of*
               *Appeals for the Seventh Circuit*