# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Fillmore v. Walker*, 2013 IL App (4th) 120533

---

| | |
|---|---|
| Appellate Court Caption | AARON P. FILLMORE, Plaintiff-Appellant, v. ROGER E. WALKER, JR., DAVID W. MITCHELL, KENNETH L. HAMILTON, APRIL MOORE, KEN BARTLEY, and LINDA ELLIS, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-12-0533 |
| Filed<br>Modified upon<br>denial of rehearing | April 17, 2013<br><br>June 26, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action by a correctional center inmate seeking relief under the Civil Rights Act of 1871 for retaliation against him by correctional officers for his complaints about prison conditions, the trial court properly ruled that section 1997e(e) of the Prison Litigation Reform Act of 1995 barred plaintiff from recovering compensatory damages, but the trial court erred in finding that plaintiff failed to prove the chilling effect of the alleged retaliation, since the relevant standard was not plaintiff's personal reaction, but the effect the retaliation would have on an ordinary prisoner, not an extraordinarily litigious prisoner such as plaintiff. |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 08-MR-59; the Hon. John W. Belz, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |

Counsel on
Appeal

Aaron Fillmore, of Pontiac, appellant *pro se*.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Brett E. Legner and Elaine Wyder-Harshman, Assistant Attorneys General, of counsel), for appellees.

Panel

JUSTICE APPLETON delivered the judgment of the court, with opinion.

Justices Pope and Knecht concurred in the judgment and opinion.

**OPINION**

¶ 1    The plaintiff in this case is Aaron Fillmore, who was an inmate in Tamms Correctional Center. The three defendants are Linda S. Ellis, formerly a correctional officer at Tamms, and David W. Mitchell and Kenneth L. Hamilton, formerly the members of the adjustment committee at Tamms, the committee that determined the guilt or innocence of inmates charged with disciplinary offenses (20 Ill. Adm. Code 504.80(j) (2003)). (Tamms has since been closed.) In count IV of his second amended complaint, plaintiff sought relief against these defendants under section 1983 of the Civil Rights Act of 1871 (42 U.S.C. § 1983 (2006)) for retaliating against him because of his complaints about prison conditions.

¶ 2    After dismissing, with prejudice, all the counts of the second amended complaint except for count IV (735 ILCS 5/2-615 (West 2010)), the trial court granted defendants' motion for summary judgment on count IV. Plaintiff appeals from the summary judgment on that count.

¶ 3    In our *de novo* review (*Pielet v. Pielet*, 2012 IL 112064, ¶ 30), we affirm the summary judgment in part and reverse it in part. We agree with one of the points in defendants' motion for summary judgment but disagree with the other two points.

¶ 4    We agree that section 1997e(e) of the Prison Litigation Reform Act of 1995 (PLRA) (42 U.S.C. § 1997e(e) (2006)) bars plaintiff from recovering compensatory damages.

¶ 5    We disagree, however, that plaintiff failed to exhaust his administrative remedies by omitting to allege, in his grievance, that Ellis retaliated against him for first-amendment activity. A regulation of the Illinois Department of Corrections (DOC) required that grievances state the "factual details," not legal theories or conclusions. 20 Ill. Adm. Code 504.810(b) (2003).

¶ 6    We also disagree that defendants have clearly shown plaintiff's inability to prove the chilling effect of the alleged retaliation. It is unclear that the disciplinary sanctions imposed upon plaintiff would fail to chill an ordinary inmate from exercising his or her first amendment right to petition the government for the redress of grievances (U.S. Const., amend. I).

¶ 7                                    I. BACKGROUND

¶ 8                        A. Allegations in the Text of Count IV

¶ 9        In count IV of the second amended complaint, plaintiff alleged as follows. In June and July 2007, he complained to two senior correctional officers, named Woods and Watts, that he had been "assaulted by the shower door operated by c/o Ellis." On July 17, 2007, Ellis told plaintiff she was going to write a false disciplinary report against him because of his complaints against her. On July 18, 2007, plaintiff did indeed receive a disciplinary report in which Ellis accused him, falsely, of committing the offenses of contraband/unauthorized property and trading or trafficking.

¶ 10       On July 25, 2007, the adjustment committee, consisting of Mitchell and Hamilton, held a disciplinary hearing in plaintiff's cell. After refusing plaintiff's request to produce a video recording that, according to plaintiff, would have proved he had not committed the charged offenses, Mitchell and Hamilton dismissed the charge of contraband/unauthorized property but found him guilty of trading or trafficking. They imposed punishment for that remaining offense.

¶ 11       In their brief, defendants describe the punishment as follows:

"Fillmore was disciplined with 15 days in segregation, a one-month reduction to C-grade status, and one month of commissary restrictions. [Citation to record.] The reduction in grade and commissary restriction did not affect Fillmore because his level of privileges was governed by Tamms's Behavioral Level System ('BLS'). [Citations to record.]

Based on his placement in disciplinary segregation, Fillmore's Behavioral Level was reduced to Behavioral Level One. [Citation to record.] As a result, Fillmore experienced a temporary loss of audiovisual and educational privileges, and a temporary reduction in yard time, showers per week, and commissary visits. [Citations to record.] Fillmore regained maximum privileges on February 1, 2008, when he was promoted to Behavioral Level Three. [Citation to record.]"

¶ 12       Plaintiff alleges, in count IV, that Mitchell and Hamilton found him guilty in retaliation for his testimony against Tamms officials in federal court and also in retaliation for previous grievances he had filed. Paragraphs 44 to 49 of the second amended complaint read as follows:

"44. After testifying against Tamms C-Max C.C. prison officials in the case of *Gilbert v. Cook*, et al. No. 01-286-CJP, United States District Court of Southern Illinois, defendant Mitchell told plaintiff that if plaintiff ever receives a disciplinary report, that he was going to find plaintiff guilty and impose punitive segregation.

45. The July 17, 2007, disciplinary report was the only report written against plaintiff since testifying against Tamms prison officials.

46. Defendants Mitchell and Hamilton stated on July 25, 2007, that plaintiff was going to be found guilty of his July 17, 2007, disciplinary report because plaintiff has filed grievances and made complaints against them.

47. Plaintiff has filed a grievance (grievance # TM-06-06-044) prior to defendant

-3-

Mitchell hearing and deciding the July 17, 2007, disciplinary report.

48. Defendants Mitchell and Hamilton deliberately retaliated against plaintiff for exercising his First Amendment rights in filing grievances (TM-06-06-044) and testifying against prison officials.

49. Defendants Mitchell and Hamilton imposed punitive disciplinary action against plaintiff in an illegal act of retaliation."

¶ 13 **B. Plaintiff's Pursuit of Administrative Redress,**
**as Shown in the Exhibits of His Second Amended Complaint**

¶ 14 On July 27, 2007, after DOC imposed the punishment upon him, plaintiff filed a grievance, in which he alleged that the disciplinary report that Ellis wrote against him on July 18, 2007, was "fabricated" and "false." He further alleged that the adjustment committee's decision "was [a] retaliatory act because [he had] filed grievances against the Committee." Among other forms of relief, he sought the expungement of the disciplinary report, further investigation of the issues he raised in his grievance, and disciplinary action against Ellis.

¶ 15 The grievance officer, April Moore, found that the grievance proceedings had complied with the procedural safeguards in DOC's rules, and therefore she recommended the denial of the grievance. The warden, Ken Bartley, concurred.

¶ 16 Plaintiff administratively appealed, and on November 7, 2007, the administrative review board likewise recommended the denial of the grievance. After reviewing all the available information and checking for compliance with procedural due-process guidelines, the administrative review board stated it was "reasonably satisfied" that plaintiff had committed the offense of trading or trafficking. The Director of DOC, Roger E. Walker, Jr., concurred in the denial.

¶ 17 **C. Summary Judgment on Count IV in the Trial Court**

¶ 18 In the trial court, defendants filed a motion for summary judgment on count IV. Paragraph 4 of the motion reads: "Defendants move for summary judgment on the following grounds: First, the alleged adverse acts taken by Defendants and against Plaintiff were insufficient to 'chill' a person of ordinary firmness from engaging in protected conduct. Second, Plaintiff is barred from recovering compensatory damages."

¶ 19 The trial court granted defendants' motion for summary judgment on count IV. In its summary judgment order, the court found as follows:

"(1) That prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement.

(2) That, under *Thomas v. Walton*, 461 F. Supp. 2d 786 (2006), an alleged retaliatory act must be one that 'could be said to have had the effect of deterring an inmate of "of ordinary firmness" from engaging in similar activity.'

(3) That the discipline and temporary consequences were insufficient to chill Plaintiff's first amendment rights and have the effect of 'deterring an inmate "of ordinary

-4-

firmness" from engaging in similar activity.'

(4) In fact, the record shows that Plaintiff has filed three other lawsuits and filed twenty separate grievances since July 17, 2007, and was not deterred in any way by Defendants' conduct."

¶ 20    This appeal followed.

¶ 21                                    II. ANALYSIS
¶ 22                      A. Exhaustion of Administrative Remedies
¶ 23    For two reasons, the trial court granted defendants' motion for summary judgment on count IV of the second amended complaint. The court accepted both of the reasons that defendants had raised in their motion. First, on the authority of *Thomas*, the trial court concluded that "the discipline and temporary consequences were insufficient to chill Plaintiff's first amendment rights and have the effect of deterring an inmate of ordinary firmness from engaging in similar activity." (Internal quotation marks omitted.) Second, the court concluded that "Plaintiff [was] barred by Illinois law from recovering compensatory damages."

¶ 24    On appeal, plaintiff contends that both of those reasons are fallacious. He cites several federal cases holding that the mere issuance of a disciplinary report is in itself chilling because the threat of punishment is more than a *de minimis* act of retaliation (and in his case, he received not only a disciplinary report but also punishment). See, *e.g.*, *Brown v. Crowley*, 312 F.3d 782, 789 (6th Cir. 2002) ("A reasonable jury could conclude that being subjected to the risk of such severe sanctions for raising a legitimate complaint would deter a person of ordinary firmness from continuing to engage in that [protected] conduct." (Internal quotation marks omitted.)); *Shariff v. Poole*, 689 F. Supp. 2d 470, 479 (W.D.N.Y. 2010); *Carter v. Dolce*, 647 F. Supp. 2d 826, 834-35 (E.D. Mich. 2009). Also, plaintiff notes that the court never cited the "Illinois law" that supposedly barred him from recovering compensatory damages.

¶ 25    Initially, in their brief, defendants do not address those criticisms by plaintiff. Instead, they raise an issue they did not raise in their motion for summary judgment: whether plaintiff exhausted his administrative remedies. Section 1997e(a) of the PLRA (42 U.S.C. § 1997e(a) (2006)) requires an inmate to exhaust his or her administrative remedies before bringing an "action *** with respect to prison conditions under section 1983." Because plaintiff's grievance accused Ellis merely of writing a "fabricated" and "false" disciplinary report against him but did not add that her motive in doing so was to retaliate against him for first-amendment activity, defendants take the position, on appeal, that plaintiff failed to exhaust his administrative remedies.

¶ 26    Defendants acknowledge that, after the adjustment committee (consisting of Mitchell and Hamilton) denied plaintiff's grievance, he accused *the committee* of retaliation. In the space reserved for his response to the denial, he wrote that the denial was nothing more than a retaliation against him for the grievances he filed against the committee in the past. According to defendants, however, that was not the same as alleging retaliation by *Ellis*. Defendants reason: "[T]here is nothing to suggest that Mitchell and Hamilton's alleged

retaliatory conduct can be imputed to Ellis, or otherwise alerted prison officials to a claim of retaliation by Ellis. Fillmore made an intentional decision to grieve retaliation by the adjustment committee but not Ellis. Therefore, he did not exhaust his retaliation claim against Ellis."

¶ 27    Plaintiff has a twofold response to defendants' contention that he failed to exhaust his administrative remedies. First, he suggests that defendants have too exacting a standard for the content of grievances. He argues that, according to *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002), and *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005), his grievance need not be "detailed" and that, according to *Reeder v. Doe 5*, 507 F. Supp. 2d 468, 482 n.16 (D. Del. 2007), and *Varela v. Demmon*, 491 F. Supp. 2d 442, 448 (S.D.N.Y. 2007), his grievance need not even specifically complain of "retaliation." Second, he argues that the failure to exhaust administrative remedies is an affirmative defense that defendants have forfeited by failing to raise it in the trial court. See *Hawthorne v. Village of Olympia Fields*, 204 Ill. 2d 243, 254 (2003).

¶ 28    Generally, it is true that, if a defendant has an affirmative defense, the defendant must plead it as an affirmative defense (735 ILCS 5/2-602, 2-613(d) (West 2008)) on pain of forfeiting it. *Haake v. Board of Education for Glenbard Township High School District 87*, 399 Ill. App. 3d 121, 140 (2010); *Carlson v. City Construction Co.*, 239 Ill. App. 3d 211, 243 (1992). Case law, however, recognizes an exception to that rule. If the affirmative defense already is apparent on the face of the complaint, the defendant need not plead the affirmative defense as an affirmative defense but instead may challenge the legal sufficiency of the complaint, pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2008)). *People ex rel. Casey v. Health & Hospitals Governing Comm'n*, 69 Ill. 2d 108, 113-14 (1977); *R&B Kapital Development, LLC v. North Shore Community Bank & Trust Co.*, 358 Ill. App. 3d 912, 921 (2005); *Senese v. Climatemp, Inc.*, 222 Ill. App. 3d 302, 317 (1991) (the affirmative defense of *laches* can be raised in a section 2-615 motion for dismissal if "(1) an unreasonable delay appears on the face of the pleading, (2) no sufficient excuse for the delay appears or is pleaded, and (3) the motion specifically points out the defect").

¶ 29    For example, in *Beahringer v. Page*, 204 Ill. 2d 363, 377 (2003), the "[p]laintiff's failure to exhaust his available administrative remedies [was] apparent from the face of the complaint." Therefore, even though the defendants in *Beahringer* never pleaded in the trial court, and never argued in the trial court, that the plaintiff had failed to exhaust his administrative remedies (*id.* at 370), the supreme court found a failure to exhaust administrative remedies and affirmed the section 2-615 dismissal on that basis (*id.* at 378). Given the motion for dismissal pursuant to section 2-615, the legal sufficiency of the complaint was a question before the trial court, and because the complaint was self-negating, it was legally insufficient. *Id.* at 370 ("Since plaintiff's complaint and attached exhibits provide the requisite factual basis, we will address this issue."). But *cf.* 735 ILCS 5/2-615(a) (West 2008) ("The [section 2-615] motion shall point out specifically the defects complained of ***."); *Casey*, 69 Ill. 2d at 113-14 (if the affirmative defense of *laches* is already apparent on the face of the complaint, the defect can be raised by a motion for dismissal for failure to state a cause of action, provided that the motion specifically points out the defect so as to

give the plaintiff a reasonable opportunity to correct it by amendment).

¶ 30    In the present case, defendants contend that the failure to exhaust administrative remedies is apparent from the face of plaintiff's second amended complaint and that, consequently, on the authority of *Beahringer*, we should affirm the dismissal of the second amended complaint even though, in the trial court, defendants never raised the defense of failure to exhaust administrative remedies. Pursuant to *Beahringer*, we will consider that defense. But *cf. People v. Fiorini*, 143 Ill. 2d 318, 337 (1991) (the appellees, *i.e.*, the prevailing parties in the trial court, forfeited the defense of failure to exhaust administrative remedies because they never raised that defense in the trial court); *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 509 (1988) (the issue the appellee raised on review had to be "commensurate with" an issue raised in the trial court); *In re Estate of Leichtenberg*, 7 Ill. 2d 545, 548-49 (1956) (same).

¶ 31    If DOC has a regulation prescribing the contents of grievances, we refer to the regulation to find out what the grievance must contain for purposes of the exhaustion of administrative remedies. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). See also *Strong*, 297 F.3d at 649 ("[T]he grievances must contain the sort of information that the administrative system requires."). Two of the cases that plaintiff cites, *Strong* and *Cannon*, are distinguishable because, at the relevant times in those cases, DOC had not yet promulgated a regulation requiring any particular amount of factual detail in grievances. *Cannon*, 418 F.3d at 718 ("Illinois has not specified any particular level of detail required for inmate grievances ***."); *Strong*, 297 F.3d at 650 ("As far as we can see, however, Illinois has not established any rule or regulation prescribing the contents of a grievance or the necessary degree of factual particularity.").

¶ 32    After the Seventh Circuit decided *Strong*, DOC promulgated a regulation specifying the required contents of a grievance. Section 504.810(b) (20 Ill. Adm. Code 504.810(b) (2003)) provides:

> "The grievance shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible."

¶ 33    Defendants' contention is that, in order to exhaust his administrative remedies, plaintiff had to allege, in his grievance, "that the [disciplinary] report was issued *in retaliation* for [plaintiff's] protected activity." (Emphasis in original.) But we do not see how this regulation, by its terms, requires plaintiff to state, in his grievance, that Ellis "retaliated against him for the first-amendment activity of complaining about prison conditions," or words to that effect. Retaliation is not a *factual detail*; rather, it is a legal theory or a conclusion that one might (or might not) draw from the factual details. It is an inference as to someone's motivation or mental state, not a concrete factual particular such as "what

happened, when, where, and the name of each person." And the requirement of giving "as much descriptive information about the individual as possible" appears to be applicable only if "the names of the individuals are not known."

¶ 34     Plaintiff's grievance "contain[ed] the sort of information that the administrative system require[d]," or at least defendants have not pointed out the omission of any information that the "administrative system" (*i.e.*, section 504.810(b)) required. *Strong*, 297 F.3d at 649. Therefore, defendants have not convinced us that plaintiff failed to exhaust his administrative remedies in that respect.

¶ 35     Besides, in so many words, plaintiff alleged retaliation by Ellis. He accused her of "fabricating" a disciplinary report against him. If an inmate accuses a correctional officer of "fabricating" a disciplinary report against the inmate, the accusation fairly implies that the correctional officer is out to get the inmate. A moderately curious grievance officer would ask why the correctional officer supposedly had this retaliatory animus against the inmate.

¶ 36     B. A Deprivation Likely To Deter Similar First Amendment Activity in the Future

¶ 37     Defendants point out that, to prove a *prima facie* case of retaliation for exercising a first amendment right, plaintiff has to prove that (1) he engaged in an activity protected by the first amendment, (2) he suffered a deprivation likely to deter similar first amendment activity in the future, and (3) his protected activity was at least a motivating factor in defendants' decisions to take the retaliatory actions. See *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). But see *Fairley v. Andrews*, 578 F.3d 518, 525-26 (7th Cir. 2009) (unless a federal statute says otherwise, proving but-for causation is part of the plaintiff's burden in all actions premised on federal law). Defendants' motion for summary judgment challenged the second element.

¶ 38     In arguing to the trial court that plaintiff had not suffered a deprivation likely to deter him from complaining of prison conditions in the future, defendants cited *Thomas*; and the court was persuaded that *Thomas* entitled them to summary judgment. In *Thomas*, 461 F. Supp. 2d at 789-90, the plaintiff was an inmate in Tamms Correctional Center, and he brought a section 1983 action against a correctional officer named Hilliard. The plaintiff alleged that Hilliard had retaliated against him for requesting an investigation of an incident in which the plaintiff had been beaten by correctional officers. *Id.* at 795. The alleged retaliation by Hilliard was twofold: (1) Hilliard's refusal to serve the plaintiff a lunch tray and (2) Hilliard's subsequent filing of a disciplinary report stating, falsely, that the plaintiff had refused to accept a lunch tray from Hilliard. *Id.*

¶ 39     The district court granted Hilliard's motion for summary judgment because the plaintiff had "failed to produce any evidence that his alleged protected speech was a substantial, motivating factor for the alleged retaliation." *Id.* at 796.

¶ 40     Then, in *dicta*, the district court remarked that, even if the record disclosed any evidence of retaliation (and it did not, in the court's opinion), the retaliation probably would be too trivial to amount to a constitutional violation. The court explained:

      " '[A] court may deny an inmate leave to proceed if the allegedly retaliatory act is not one that could be said to have had the effect of deterring an inmate "of ordinary firmness"

-8-

from engaging in similar activity.' [*Johnson v. Kingston*, 292 F. Supp. 2d 1146, 1152 (W.D. Wis. 2003)] (quoting *Pieczynski v. Duffy*, 875 F.2d 1331, 1333 (7th Cir. 1989)). In *Bart v. Telford*, 677 F.2d 622 (7th Cir. 1982), the court cautioned federal courts against entertaining retaliation claims over which 'a certain air of the ridiculous hangs,' and said, 'It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise.' *Id.* at 625. A number of sister circuits have adopted a similar 'de minimis' standard in evaluating retaliation claims in the prison setting. [Citations.] In this case, the Court is inclined to conclude that the retaliation alleged in Count 7 is subject to dismissal under the de minimis standard, given the trivial nature of the alleged constitutional deprivation which obviously has not deterred Thomas from bringing this suit, together with the fact that allowing such claims to proceed in federal court risks virtually endless federal judicial interference in the operation of prisons. [Citation.] However, the Court is not required to decide the question. Assuming for the sake of argument that the alleged retaliation amounts to a cognizable violation of Thomas's constitutional rights under 42 U.S.C. § 1983, Thomas has failed to produce evidence of retaliatory intent sufficient to withstand summary judgment." *Thomas*, 461 F. Supp. 2d at 796-97.

¶ 41    In the present case, in granting defendants' motion for summary judgment, the trial court relied on this *dicta* from *Thomas*. On appeal, defendants insist that the trial court was correct that plaintiff suffered no deprivation likely to deter first amendment activity in the future. Defendants do not cite *Thomas* (this time), but they argue that "[t]he Seventh Circuit's treatment of the retaliation claims raised in [*Bridges v. Gilbert*, 557 F.3d 541 (7th Cir. 2009),] is instructive."

¶ 42    In *Bridges*, the plaintiff was an inmate at the Wisconsin Secure Program Facility. *Id.* at 544. According to the plaintiff, he had warned a correctional officer that he was going to file a grievance against her unless she stopped kicking his cell door, turning the lights of his cell on and off, and slamming his cell trap while he was sleeping. *Id.* at 554. For this warning, the correctional officer allegedly retaliated against him by "fil[ing] an unjustified disciplinary charge, which another Defendant upgraded to a 'major offense.'" *Id.* at 555. Ultimately, however, the disciplinary charge was dismissed, and for that reason, the Seventh Circuit regarded the issuance of the disciplinary charge as trivial and *de minimis*: "[a] single retaliatory disciplinary charge that is later dismissed is insufficient to serve as the basis of a § 1983 action." *Id.* Without punishment, there would be no injury and hence no deterrence, the Seventh Circuit reasoned. "'A tort to be actionable requires injury. It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise . . . .'" *Id.* (quoting *Bart*, 677 F.2d at 625).

¶ 43    Defendants suggest that the facts in plaintiff's case "largely" track those in *Bridges*. Defendants argue: "[T]he retaliation alleged by [plaintiff] was a one-time occurrence, based on a single disciplinary report, and involving a limited number of people. [Citation to record.] Furthermore, in [plaintiff's] case the charges were partially dismissed [in that the contraband/unauthorized property charge was deleted]. [Citation to record.] Thus a

-9-

comparison with the claims alleged in *Bridges* shows that the circuit court did not err in holding that the retaliation alleged was insufficient to deter an inmate of ordinary firmness from engaging in similar activity."

¶ 44    The trouble with this reasoning is that defendants identify certain incidental facts in *Bridges* that they regard as important but there is no textual evidence that the Seventh Circuit regarded those particular facts as important. In its discussion in *Bridges*, the Seventh Circuit did not appear to attach any significance to whether the retaliation was a one-time occurrence involving a "limited" number of people. The Seventh Circuit never said that, in order to be actionable under section 1983, retaliation had to be repeated and had to be inflicted by a multitude of people. By that logic, a one-time beating by a solitary correctional officer could not be an actionable retaliation. Instead, the Seventh Circuit attached significance to the fact that the disciplinary charge in that case had been dismissed, without the imposition of any punishment: "A single retaliatory disciplinary charge that is later dismissed is insufficient to serve as the basis of a § 1983 action." *Bridges*, 557 F.3d at 555.

¶ 45    In the present case, by contrast, not all the disciplinary charges were dismissed. Plaintiff faced two charges, and only one of the charges, the charge of contraband/unauthorized property, was dismissed. The adjustment committee found him guilty of the other charge, the charge of trading or trafficking, and various officials of DOC punished him for that charge.

¶ 46    And the punishment was considerably more robust than the alleged retaliation of which the plaintiff complained in *Thomas*, *i.e.*, a correctional guard's refusal to serve him a lunch tray on a single occasion (*Thomas*, 461 F. Supp. 2d at 795). It took plaintiff six months to work his way back up to Behavioral Level Three, and presumably he lost, or did not receive, good-conduct credits.

¶ 47    Granted, the punishment was, as defendants say, temporary, but surely defendants do not mean to contend that punishment must be unending to have a chilling effect. Taking *Bridges* at face value, all that matters is that the inmate was disciplined for complaining about prison conditions. *Bridges* says that "retaliatory discipline" is actionable under section 1983. *Bridges*, 557 F.3d at 552. See also *Boxer X v. Harris*, 437 F.3d 1107, 1112 (11th Cir. 2006) ("First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment."); *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988). Discipline is not necessarily *de minimis* by reason of being temporary.

¶ 48    By discounting the discipline imposed on plaintiff, by arguing that such discipline would be unlikely to deter an inmate of ordinary firmness, defendants put themselves, or at least their employer, in an untenable position. Essentially, defendants suggest that an ordinary inmate would consider DOC's disciplinary sanctions for trading or trafficking to be "trivial" or "de minimis." *Thomas*, 461 F. Supp. 2d at 797. They imply that a "certain air of the ridiculous" hangs over any claim that the discipline DOC prescribes for this misconduct would likely deter an ordinary inmate–whereas discipline, by its very nature, is calculated to deter inmates and to change their behavior. (Internal quotation marks omitted.) *Id.* at 796.

¶ 49    And yet plaintiff has not been deterred, defendants observe. Since July 17, 2007, when Ellis wrote her disciplinary report, he has filed 20 grievances and 4 lawsuits.

¶ 50    Even so, that merely shows that plaintiff is extraordinarily litigious. His personal reaction to the alleged retaliation is not the question. The relevant standard is not subjective, but objective: the effect the retaliation would have on an ordinary prisoner. *Bridges*, 557 F.3d at 555. That plaintiff has continued to file grievances and lawsuits arguably shows he is an inmate of more than ordinary firmness. His individual behavior does not necessarily align with the objective standard. See *Brodheim v. Cry*, 584 F.3d 1262, 1274 (9th Cir. 2009); *Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004). If the test were whether the plaintiff-inmate subjectively was chilled, no inmate could obtain judicial relief from retaliation against first amendment activity, because the very filing of the section 1983 lawsuit would prove that the retaliation was not chilling.

¶ 51    So, we are unconvinced that plaintiff clearly is unable to prove the tendency of the alleged retaliation to chill ordinary inmates from petitioning the government for the redress of grievances. In our *de novo* review, we find that defendants failed to carry their initial burden in the summary judgment procedure: they failed to establish plaintiff's clear inability to prove that the punishment he incurred, ostensibly for trading or trafficking, would deter an inmate of ordinary firmness from complaining further of prison conditions. See *Williams*, 316 Ill. App. 3d at 688-89; *Bart*, 677 F.2d at 625.

¶ 52                                          C. Causation

¶ 53    The members of the adjustment committee, Mitchell and Hamilton, argue that we should affirm the summary judgment in their favor because plaintiff "cannot show causation, where [he] has not offered evidence establishing that the alleged retaliatory motive was a 'necessary condition' for the adjustment committee to find him guilty." See *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012).

¶ 54    But plaintiff had no occasion to offer such evidence, because, in their motion for summary judgment, defendants did not challenge causation. See *Williams v. Covenant Medical Center*, 316 Ill. App. 3d 682, 689 (2000); 4 Richard A. Michael, Illinois Practice § 38:5, at 319-20 (2d ed. 2011). Of the three elements of plaintiff's *prima facie* case, they challenged only the chilling effect of the retaliation. If the movant could seek and obtain a summary judgment on one basis and then, on appeal, defend the summary judgment on a wholly different basis that the movant never raised in the trial court, thereby depriving the opposing party of the opportunity to respond with evidence, the movant could make the summary judgment unassailable on appeal simply by sandbagging in the trial court. "Employing the [forfeiture] rule against an appellee is particularly apt 'if the opposing party could have introduced evidence to contest or refute the assertions made on appeal, had he an opportunity to do so in the trial court.' " *Evans v. United Bank of Illinois, N.A.*, 226 Ill. App. 3d 526, 531 (1992) (quoting *In re Marriage of Rodriguez*, 131 Ill. 2d 273, 279 (1989)). See also *Genus v. Pride Container Corp.*, 141 Ill. App. 3d 947, 951 (1986) ("The other issues of fact which [the movant-appellee] addresses in its briefs on appeal cannot support the entry of summary judgment on this motion because they were not properly raised for consideration on the motion for summary judgment.").

¶ 55    Again, the three elements of the *prima facie* case are as follows: (1) plaintiff engaged in

activity protected by the first amendment, (2) he suffered a deprivation likely to deter similar activity in the future, and (3) his protected activity motivated defendants to take the retaliatory action. See *Kidwell*, 679 F.3d at 964. In their motion for summary judgment, defendants did not challenge either (1) or (3); they challenged only (2). Because the issue of causation was not before the trial court in the summary judgment proceeding, it is not before us, either. See *Greer*, 122 Ill. 2d at 509; *Kravis*, 60 Ill. 2d at 147; *Leichtenberg*, 7 Ill. 2d at 549; *Evans*, 226 Ill. App. 3d at 530; *Genus*, 141 Ill. App. 3d at 951.

¶ 56                              D. Compensatory Damages

¶ 57       Defendants contend that, under section 1997e(e), plaintiff cannot recover any compensatory damages, because he suffered no physical injury from their alleged retaliation. Section 1997e(e) provides: "No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e) (2006). (But where is the "federal civil action"? An "action" is a "judicial proceeding." Black's Law Dictionary 28 (7th ed. 1999). It would seem that, although plaintiff's action is premised on a federal statute (section 1983), it is a state-court action–a proceeding in state court–not a federal action. In any event, we need not resolve that question, since none of the parties raise it.)

¶ 58       Plaintiff argues that "[a] deprivation of First Amendment rights standing alone is a cognizable injury" for which he can recover compensatory damages. *Rowe v. Shake*, 196 F.3d 778, 781 (7th Cir. 1999). Plaintiff is correct that, if a state actor deprives him of his first amendment rights, he can recover damages for this deprivation in itself as distinct from any emotional distress he might have suffered as a result of the deprivation; but these damages will be nominal rather than compensatory. *Calhoun v. DeTella*, 319 F.3d 936, 940-41 (7th Cir. 2003); *Shatner v. Page*, No. 00-0251-DRH, 2009 U.S. Dist. LEXIS 8324, at *83-84 (S.D. Ill. Feb. 4, 2009). Therefore, we hold that the trial court is correct in its conclusion that plaintiff is barred from recovering compensatory damages, although section 1997e(e), rather than "Illinois law," is what bars him from doing so.

¶ 59                                  III. CONCLUSION

¶ 60       For the foregoing reasons, we affirm the trial court's judgment in part and reverse it in part, and we remand this case for further proceedings. We affirm the summary judgment insomuch as it finds that plaintiff is barred from recovering compensatory damages, but we otherwise reverse the summary judgment on count IV of the second amended complaint.

¶ 61       Affirmed in part and reversed in part; cause remanded.