NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 200631-U

NO. 4-20-0631

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 4, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| AARON FILLMORE, | ) | Appeal from the |
|     Plaintiff-Appellant, | ) | Circuit Court of |
|     v. | ) | Sangamon County |
| ROB JEFFREYS and JOSHUA YOUNG, | ) | No. 20MR209 |
|     Defendants | ) | |
| (Joshua Young, Defendant-Appellee). | ) | Honorable |
| | ) | Christopher G. Perrin, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE KNECHT delivered the judgment of the court.
Justice Turner concurred in the judgment.
Justice Steigmann specially concurred.

**ORDER**

¶ 1    *Held*:   The appellate court affirmed in part, reversed in part, and remanded for further proceedings, concluding plaintiff's complaint sufficiently stated a claim for monetary damages but his claims for declaratory relief were barred for a lack of standing.

¶ 2    Plaintiff, Aaron Fillmore, an inmate in the custody of the Illinois Department of Corrections (Department), filed a complaint against defendants, Rob Jeffreys, Director of Corrections, and Joshua Young, a Department employee. Young filed a combined motion to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (Civil Code) (735 ILCS 5/2-619.1 (West 2018)). Following a hearing, the circuit court granted Young's motion and then ordered the case dismissed and stricken. Fillmore now appeals from that dismissal. For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.

¶ 3                               I. BACKGROUND

¶ 4    For the purposes of this appeal, the following facts gleaned from the complaint and the exhibits attached thereto are accepted as true. Fillmore is a devout Orthodox Jew and strict observant of the Torah and Code of Jewish Law. He adheres to and receives from prison staff a strict Kashrut diet in accordance with his Jewish faith. His religious beliefs mandate he must not commit slander or be a talebearer.

¶ 5    On December 6, 2019, Fillmore was housed at Lawrence Correctional Center under a "non-disciplinary [administrative detention] status *** in Phase III" and "received all available rights and privileges under Administrative Directive No. 05.12.101 and Institutional Directive No. 05.12.101." On that date, Fillmore was approached by two different prison staff members to give a statement concerning a yard incident involving two other inmates. Fillmore repeatedly objected to providing any statement based upon his sincere religious beliefs that he must not commit slander or be a talebearer and his right to remain silent.

¶ 6    On December 9, 2019, Fillmore received a disciplinary report drafted by Young. The report alleges Fillmore violated prison rule 110, which prohibits impeding or interfering with an investigation (Rule 110) (20 Ill. Adm. Code 504.Appendix A, 110 (2017)), by refusing to give a statement concerning the yard incident. The report designates that Fillmore is to be held in "Temporary Confinement." Near that designation is an area for a "Shift Supervisor's Signature." No signature is present in that area.

¶ 7    From December 9 through December 16, 2019, Fillmore was held in what he describes as "extreme solitary confinement." Fillmore explained he was "denied all his rights, privileges[,] and all yard privileges."

¶ 8    On December 16, 2019, the disciplinary report was dismissed and expunged. Thereafter, Fillmore filed multiple grievances alleging (1) the disciplinary report was the result of

Young retaliating against him for exercising his sincere religious beliefs that he must not commit slander or be a talebearer and for exercising his right to remain silent and (2) Rule 110 was unconstitutional and violated federal law. While his grievances were under administrative review, Fillmore was transferred to Pontiac Correctional Center. The grievances were later denied, and Fillmore was accorded no relief on administrative review.

¶ 9    Unable to obtain any administrative relief, Fillmore filed the instant complaint in the circuit court. In his complaint, Fillmore alleged claims seeking monetary damages and declaratory relief pursuant to section 1983 of Title 42 of the United States Code (Civil Rights Act) (42 U.S.C. § 1983 (2016)), section 2-701 of the Civil Code (735 ILCS 5/2-701 (West 2018)), and section 2000cc-1 of the federal Religious Land Use and Institutionalized Persons Act (RLUIPA) (42 U.S.C. § 2000cc-1 (2016)). Specifically, Fillmore sought monetary damages on the basis that the disciplinary report and temporary confinement was the result of Young retaliating against him for exercising his sincere religious beliefs and his right to remain silent. Fillmore also sought declarations that Rule 110 was unconstitutional and violated RLUIPA. The complaint named Jeffreys and Young as defendants. Jeffreys, however, was never served with the complaint, and he has had no involvement in these proceedings.

¶ 10    Young filed a combined motion to dismiss Fillmore's complaint pursuant to section 2-619.1 of the Civil Code (735 ILCS 5/2-619.1 (West 2018)). Young argued the claims alleged in Fillmore's complaint were insufficiently stated and/or barred for a lack of standing.

¶ 11    After receiving a written response to Young's motion to dismiss from Fillmore and conducting a hearing by telephone, the circuit court granted Young's motion to dismiss, finding, "[Fillmore] has not alleged a legally and factually sufficient cause of action. Additionally, Fillmore lacks standing to raise his claims." The court ordered, "Case dismissed and stricken."

¶ 12        This appeal followed.

¶ 13                                II. ANALYSIS

¶ 14        On appeal, Fillmore argues this court should reverse the circuit court's judgment dismissing his complaint and remand for further proceedings because, contrary to the finding of the circuit court, his complaint sufficiently stated claims for monetary damages and declaratory relief which were not barred for a lack of standing. Young disagrees.

¶ 15        As an initial matter, both Fillmore and Young assert this court has jurisdiction even though Jeffreys was never served with the complaint. We agree. Although Fillmore named Jeffreys as a defendant in his complaint, he did not allege any independent claims against Jeffreys. Further, after granting Young's motion to dismiss, the circuit court ordered the case be dismissed and stricken. Based upon this record, we find the circuit court entered a final and appealable judgment. See *Merritt v. Randall Painting Co.*, 314 Ill. App. 3d 556, 559, 732 N.E.2d 116, 117-18 (2000) (finding an order dismissing a complaint on motion of some, but not all, of the defendants is final and appealable where the grounds for dismissal apply to all the defendants alike). Because Fillmore filed a timely notice of appeal from the final judgment, we have jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994).

¶ 16        Turning to the merits, Young sought, and the circuit court granted, dismissal of Fillmore's complaint pursuant to section 2-619.1 of the Civil Code (735 ILCS 5/2-619.1 (West 2018)). A motion under section 2-619.1 allows a party to "combine a section 2-615 motion to dismiss based upon a plaintiff's substantially insufficient pleadings with a section 2-619 motion to dismiss based upon certain defects or defenses." *Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 164, 788 N.E.2d 740, 747 (2003). On appeal, a circuit court's dismissal of a complaint pursuant to section 2-619.1 is reviewed *de novo*. *Morris v. Harvey Cycle*

- 4 -

*& Camper, Inc.*, 392 Ill. App. 3d 399, 402, 911 N.E.2d 1049, 1052 (2009).

¶ 17    We begin with Fillmore's claim for monetary damages. Fillmore sought monetary damages pursuant to section 1983 of the Civil Rights Act (42 U.S.C. § 1983 (2016)) based upon Young's alleged retaliation against him for exercising his first amendment rights. To present a first amendment retaliation claim, an inmate must allege "(1) he engaged in an activity protected by the first amendment, (2) he suffered a deprivation likely to deter similar first amendment activity in the future, and (3) his protected activity was at least a motivating factor in [the defendant's] decisions to take the retaliatory actions." *Fillmore v. Walker*, 2013 IL App (4th) 120533, ¶ 37, 991 N.E.2d 340.

¶ 18    There has been no dispute concerning whether Fillmore sufficiently alleged he engaged in an activity protected by the first amendment. Fillmore alleged he was retaliated against for exercising his sincere religious beliefs that he must not commit slander or be a talebearer and for exercising his right to remain silent. Absent any argument to the contrary, we find Fillmore sufficiently alleged he engaged in activities protected by the first amendment.

¶ 19    Young does dispute whether Fillmore sufficiently alleged he suffered a deprivation likely to deter similar first amendment activity in the future. Young contends the temporary confinement and loss of certain privileges pending the dismissal of the disciplinary report is not a serious change in circumstances for an inmate such that it would deter an ordinary inmate from engaging in protected activity.

¶ 20    When considering whether an inmate has suffered a deprivation likely to deter similar first amendment activity in the future, " '[w]e apply an objective test: whether the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity.' " *Douglas v. Reeves*, 964 F.3d 643, 647 (7th Cir. 2020) (quoting

*Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011)). "Whether retaliatory conduct is sufficiently severe to deter is generally a question of fact, but when the asserted injury is truly minimal, we can resolve the issue as a matter of law." *Id.*

¶ 21    Here, Fillmore alleged, prior to receiving the disciplinary report, he was housed under a "non-disciplinary [administrative detention] status *** in Phase III" and "received all available rights and privileges under Administrative Directive No. 05.12.101 and Institutional Directive No. 05.12.101." Then, after he received the disciplinary report, he was placed in "extreme solitary confinement" for an eight-day period during which he was "denied all his rights, privileges[,] and all yard privileges." While the disciplinary report was ultimately dismissed and inmates routinely face intermittent confinement and the loss of privileges for nonpunitive purposes, we cannot say, as a matter of law, the alleged confinement was not sufficiently severe to deter an inmate under similar circumstances from engaging in similar first amendment activity in the future. We find Fillmore sufficiently alleged a deprivation likely to deter similar first amendment activity in the future.

¶ 22    Young also disputes whether Fillmore sufficiently alleged his protected activity was a motivating factor in the decision to take the alleged retaliatory actions. Young contends Fillmore has not alleged any facts to show (1) Young was aware of the purported first amendment basis for refusing to give a statement or (2) the uncontested violation of Rule 110 as written did not motivate Young's actions.

¶ 23    When considering whether an inmate's protected activity was a motivating factor in a defendant's decision to take the alleged retaliatory actions, an inmate may establish retaliatory intent by showing a causal connection between the protected activity and the complained-of adverse actions. *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999).

¶ 24    Here, Fillmore alleged he repeatedly objected to providing any statement to prison staff based upon his sincere religious beliefs and his right to remain silent. Then, shortly after Fillmore's objections, Young issued the disciplinary report to Fillmore based upon Fillmore's refusal to give a statement. The report also designated, without any signature from a shift supervisor, that Fillmore was to be held in temporary confinement. After eight days of temporary confinement, the report was dismissed and expunged. While Fillmore did not allege that he raised his first amendment objections to Young personally, we find Fillmore has sufficiently alleged a causal connection based on the above events to suggest a retaliatory intent on behalf of Young. We further find the fact there might be a plausible, nonretaliatory reason for Young's actions does defeat Fillmore's claim at this stage in the proceedings.

¶ 25    Accordingly, we find Fillmore sufficiently stated a claim for monetary damages based upon Young's alleged retaliation against him for exercising his first amendment rights. Young does not assert, nor do we find, any alternative basis to affirm the circuit court's dismissal of Fillmore's claim. Therefore, the dismissal of the claim for monetary damages must be reversed.

¶ 26    We turn next to Fillmore's claims for declaratory relief. Specifically, Fillmore sought declarations that Rule 110 was unconstitutional and violated RLUIPA pursuant to section 2-701 of the Civil Code (735 ILCS 5/2-701 (West 2018)), section 1983 of the Civil Rights Act (42 U.S.C. § 1983 (2016)), and section 2000cc-1 of RLUIPA (42 U.S.C. § 2000cc-1 (2016)).

¶ 27    To pursue his claims for declaratory relief, Fillmore must have standing. See *Marshall v. County of Cook*, 2016 IL App (1st) 142864, ¶ 14, 51 N.E.3d 27 ("Dismissal is mandated where a plaintiff lacks standing, because that deficiency negates the very cause of action."). To establish standing, a showing of an injury in fact that is actual or imminent is generally necessary. *Glisson v. City of Marion*, 188 Ill. 2d 211, 221, 720 N.E.2d 1034, 1039 (1999);

see also *People v. Aguilar*, 2013 IL 112116, ¶ 12, 2 N.E.3d 321 (quoting *People v. Mayberry*, 63 Ill. 2d 1, 8, 345 N.E.2d 97, 101 (1976)) (" 'One has standing to challenge the validity of a statute if he has sustained or if he is in immediate danger of sustaining some direct injury as a result of enforcement of the statute.' ").

¶ 28        Here, the disciplinary report alleging Fillmore violated Rule 110 was dismissed and expunged, and there is no basis for us to conclude Rule 110 would be applied against Fillmore in a similar fashion in the future, especially where Fillmore has since been moved to a different correctional center. We find an absence of an injury in fact that is actual or imminent, and therefore, Fillmore's claims for declaratory relief are barred for a lack of standing. On these grounds alone, the dismissal of the claims for declaratory relief may be affirmed.

¶ 29                              III. CONCLUSION

¶ 30        We affirm the circuit court's judgment to the extent it dismissed Fillmore's claims for declaratory relief but reverse its judgment to the extent it dismissed his claim for monetary damages. We remand for further proceedings.

¶ 31        Affirmed in part and reversed in part; cause remanded.

¶ 32        JUSTICE STEIGMANN, specially concurring:

¶ 33        As noted by my distinguished colleagues in the majority, the crux of plaintiff Fillmore's complaint is that he is "a devout Orthodox Jew and strict observant of the Torah and Code of Jewish Law *** [and] [h]is religious beliefs mandate he must not commit slander or be a talebearer." *Supra* ¶ 4. Based upon his claimed "religious beliefs," Fillmore declined to give a statement to prison staff members concerning a yard incident involving two other inmates. Because of that refusal, the prison authorities imposed disciplinary measures upon Fillmore.

¶ 34        The Illinois Attorney General, who is representing the defendant prison officials, is

aware of the alleged "constitutional basis" to plaintiff's claim, writing in the Attorney General's brief as follows: "Fillmore stated that he exercised his First Amendment rights to practice his religion (Judaism, which he alleged prohibited him from being a prison informant) and to free speech (more precisely, his right not to be compelled to speak) when he refused to cooperate in the prison investigation." Nonetheless, neither in the trial court nor in this court has the Attorney General challenged Fillmore's claim that his adherence to Orthodox Judaism prohibits him from cooperating with an investigation of a prison incident.

¶ 35      Based upon the Attorney General's failure to challenge this claim, the majority opinion states the following: "There has been no dispute whether Fillmore sufficiently alleged he engaged in an activity protected by the first amendment." *Supra* ¶ 18.

¶ 36      I specially concur in this case because, although I agree that the Attorney General has not disputed Fillmore's claim that he engaged in an activity protected by the first amendment, I have strong doubts that Fillmore's religious claim could withstand scrutiny. That is, I strongly doubt there is any basis to Fillmore's claim that his being "a devout Orthodox Jew and being a strict observant of the Torah and Code of Jewish Law" prevents him in any way from cooperating with prison authorities to give them a statement concerning a prison yard incident. If, as I suspect, that claim is devoid of any merit, then Fillmore's entire case would be similarly devoid of any merit.

¶ 37      Because the Attorney General has not challenged Fillmore's dubious first amendment claim, we are compelled to accept this case as if it were soundly based. However, I do not want my concurrence to somehow be understood as deeming Fillmore's assertions regarding Orthodox Judaism to have any merit whatsoever.