William **VARELA**, Plaintiff,

v.

Officer Craig R. **DEMMON**,
et. al, Defendants.

No. 05 Civ. 6079(SHS)(GWG).

United States District Court,
S.D. New York.

June 14, 2007.

Claudia Angelos, New York, NY, for William Varela.

Christine A. Ryan, New York, NY, Felicia Grace Notaro, Inna Reznik, Attorney General of the State of New York, New York, NY, for Correction Officer Demmon.

## AMENDED ORDER

STEIN, District Judge.

On May 17, 2007, Magistrate Judge Gabriel W. Gorenstein issued a Report and Recommendation recommending that defendants' motion to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) and 12(b)(1) be denied. No objections by any party have been filed to date.

After reviewing the Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) de novo, the Court accepts the recommendation of Magistrate Judge Gorenstein to deny defendants' motion.

Accordingly, for the reasons set forth in the Report and Recommendation date May 17, 2007,

IT IS HEREBY ORDERED that defendants' motion to dismiss the amended complaint is denied.

## REPORT AND RECOMMENDATION

GORENSTEIN, United States Magistrate Judge.

William Varela, currently an inmate at the Eastern N.Y. Correctional Facility, has brought this suit under 42 U.S.C. § 1983 against six individuals employed at the Green Haven Correctional Facility, where Varela was previously housed. Varela alleges violations of his rights under both the First and Eighth Amendments. Defendants now move to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).

## I. BACKGROUND

### A. Varela's Amended Complaint

Varela filed a pro se complaint in this matter on June 30, 2005. (Docket # 2). After counsel was appointed, Varela filed an amended complaint. See Amended Complaint, filed November 21, 2006 (Docket # 49) ("Am.Compl."). For purposes of deciding this motion to dismiss, the facts as alleged in the amended complaint are assumed to be true.

On or about March 24, 2004, Varela "spoke to the sergeant who supervised [his] work program, complain[ing] . . . that [Officer Craig] Demmon," who was new to the shift, "had not let [Varela] shower" after Varela's porter shift in "contravention of custom." Am. Compl. ¶¶ 10–13. "On about 9 pm on March 25," after being "admonish[ed]" by his "superior," Demmon "confronted Varela about [his] complaint." Id. ¶ 16. Demmon indicated that he was "upset" and "threatened revenge." Id.

Later that night, during a pre-scheduled time to use the phone, see id. ¶¶ 17–18, "Demmon ordered Varela to hang up the phone and to approach him," see id. ¶ 18; Varela "complied," but when he "insisted he had signed up to use the phone . . . Demmon struck [him] . . . [and] grabbed [his] neck and blocked Varela's passage back to his cell." Id. ¶ 19. Officer Scott Hahn "put Varela in a choke hold . . . [and w]hile Hahn held Varela by the neck, . . . Demmon punched Varela repeatedly, [until] Varela lost consciousness." Id. ¶¶ 21–22. Varela awoke in handcuffs, id. ¶ 24, when "an officer twisted his foot." Id. ¶ 25. By that time, Correction Officers Michael Mrzyglod, Robert Wahlquist and Sergeant Thomas Lapier had appeared on the scene. Id. ¶ 24. Demmon explained to them that "Varela had started the

fight," *id.* ¶ 26, and then kicked him. *Id.* ¶ 27.

Mrzyglod, Wahlquist and Lapier then "escorted him out of the cell block," *id.* ¶ 28, but "[i]nstead of taking him directly to the medical clinic, [they] took him into the building where [Correction Officer Paul] Riccione was stationed," *id.*, and "Riccione, Lapier, Mrzyglod and Wahlquist assaulted [him] . . . punch[ing], knee[ing] and slapp[ing] him." *Id.* ¶ 29. Varela's amended complaint attributed the officers' violence to "the purpose of avenging what they wrongly believed to be Varela's attack on a fellow officer." *Id.*

Varela was "badly injured" and, after being seen by someone in the medical clinic, he was "taken to an outside hospital." *Id.* ¶ 30. Varela "suffered a fractured rib, total and permanent loss of hearing in one ear, lacerations to his forehead, ear and upper lip, abrasions to the right side of his face, a bloody and deformed nose, a bruised eye, a swollen ankle, and multiple scratches and bruises." *Id.* ¶ 34.

"On the night of March 25, 2004," Demmon filed a misbehavior report "falsely alleging that Varela had assaulted him." *Id.* ¶ 31. As a result of that report, Varela was found guilty of the charge and sentenced to 365 days in solitary confinement. *Id.* ¶ 33.

The amended complaint alleges that the defendants violated Varela's rights under the First and Eighth Amendments. *Id.* ¶ 37. It seeks, *inter alia,* injunctive relief and compensatory and punitive damages. *Id.* at 6.

### B. *The Instant Motion*

The defendants have moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Notice of Motion, filed Dec. 4, 2006 (Docket # 50); Memorandum of Law in Support of Defendants' Motion to Dismiss, filed Dec. 4, 2006 (Docket # 51) ("Def.Mem."); Declaration of Felicia G. Notaro, filed Dec. 4, 2006 (Docket # 52) ("Notaro Decl."). They base the motion on two grounds: (1) Varela has not exhausted his administrative remedies (a) as to his claim of excessive force against defendants Mrzyglod, Wahlquist and Riccione and (b) as to his claim of retaliation against defendants Demmon, Hahn and Lapier, and (2) the amended complaint fails to state a claim for retaliation against defendants Demmon, Hahn and Lapier. Def. Mem. at 2. Additionally, Demmon argues that he is entitled to qualified immunity from liability for the claim that he filed a false misbehavior report in retaliation for Varela's complaint to Demmon's superior. *Id.* at 2, 15–16.

## II. *DISCUSSION*

### A. *Motion to Dismiss for Lack of Subject Matter Jurisdiction*

■ Defendants assert in their opening brief that they are moving to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), Def. Mem. 2, 4—but nowhere in their papers do they explain the basis for this contention. To the extent they mean to argue that any failure by Varela to exhaust administrative remedies would result in an absence of subject matter jurisdiction over Varela's claims, that argument is frivolous. *See, e.g., Giano v. Goord,* 380 F.3d 670, 675 (2d Cir. 2004) ("administrative exhaustion is not a jurisdictional predicate") (citing *Richardson v. Goord,* 347 F.3d 431, 431 (2d Cir. 2003)); *accord Jones v. Bock,* —— U.S. ——, 127 S.Ct. 910, 919–921, 166 L.Ed.2d 798 (2007) ("inmates are not required to specially plead or demonstrate exhaustion in their complaints"). Indeed, defendants at one point note that "exhaustion . . . is not a jurisdictional question." Def. Mem.

at 8. Accordingly, the motion to dismiss for lack of subject matter jurisdiction must be denied.

### B. *Motion to Dismiss for Failure to Exhaust Administrative Remedies*

■ Defendants moved to dismiss under Fed.R.Civ.P. 12(b)(6) based on Varela's alleged failure to exhaust administrative remedies. But no such motion could be granted without treating the motion as one for summary judgment inasmuch as exhaustion is an "affirmative defense," *Jones,* 127 S.Ct. at 919–21, and thus there is no obligation on the part of a plaintiff to allege the exhaustion of administrative remedies in the complaint. In fact, defendants' motion papers attach a copy of the grievance filed by Varela and the subsequent appeal, *see* Ex. A to Notaro Decl., though they did not seek to have the motion treated as one for summary judgment. Varela, by contrast, requested that the Court treat the defendants' motion on this point as one for summary judgment. *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss, filed Feb. 13, 2007 (Docket # 56), at 15. Varela attached both a statement pursuant to Local Civil Rule 56.1 as well as a declaration that attached various documents relating to the exhaustion issue. *See* Plaintiff's Local Rule 56.1 Statement of Material Facts in Opposition to Defendants' Motion to Dismiss on Exhaustion Grounds ("Pl.56.1"), filed Feb. 13, 2007 (Docket # 57). Defendants do not oppose Varela's request. *See* Defendants' Reply in Support of Their Motion to Dismiss Plaintiff's Amended Complaint, filed Feb. 28, 2007 (Docket # 59) ("Reply Mem."), at 8. Accordingly, the Court will treat the defendants' motion on the issue of exhaustion as a motion for partial summary judgment.

### 1. *Law Governing Summary Judgment Motions*

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)), *cert. denied,* 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988). A genuine issue of material fact "may reasonably be resolved in favor of either party" and thus should be left to the finder of fact. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Here, the parties do not dispute any of the facts regarding exhaustion. Accordingly, the question before the Court is simply whether the defendants are "entitled to a judgment as a matter of law" based on the undisputed facts. Fed. R.Civ.P. 56(c). As noted, defendants argue that all of Varela's claims except his claim of excessive force against defendants Demmon, Hahn and Lapier should be dismissed as a matter of law because they are unexhausted. *See* Def. Mem. at 2, 5 n. 2.

### 2. *The PLRA*

■ The Prison Litigation Reform Act ("PLRA") provides in relevant part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Accordingly, "[c]omplete exhaustion of … administra-

tive remedies through the highest level for each claim is required." *Veloz v. New York,* 339 F.Supp.2d 505, 514 (S.D.N.Y.), *aff'd,* 178 Fed.Appx. 39 (2d Cir.2006); *see also Porter v. Nussle,* 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) ("All 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.' ") (citations omitted). In addition, the exhaustion must be "proper"—that is, "compl[y] with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* —— U.S. ——, 126 S.Ct. 2378, 2386–87, 165 L.Ed.2d 368 (2006). Further, it is well established that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532, 122 S.Ct. 983. The exhaustion requirement applies even when a plaintiff seeks relief not available in prison administrative proceedings, such as monetary damages. *See Booth v. Churner,* 532 U.S. 731, 740–41, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001).

### 3. *New York's Inmate Grievance Program*

■ In New York, exhaustion for state prisoners generally requires complying with the three-step grievance and appeal procedure outlined in the Inmate Grievance Program. *See* N.Y. Comp.Codes R. & Regs. tit. 7 ("7 N.Y.C.R.R."), § 701.5. In brief, an inmate must first file a complaint with the Inmate Grievance Resolution Committee ("IGRC"). 7 N.Y.C.R.R. § 701.5(a). Next, after receiving a response from the IGRC, the inmate must, if he disagrees with the decision, appeal to the superintendent of the facility. *Id.*

§ 701.5(b). Finally, after receiving a response from the superintendent, the prisoner may seek any review of the superintendent's decision with the central office review committee ("CORC"). *Id.* § 701.5(c); *see also Hemphill v. New York,* 380 F.3d 680, 682 (2d Cir.2004). Generally, "[a] prisoner has not exhausted his administrative remedies until he goes through all three levels of the grievance procedure." *Hairston v. LaMarche,* 2006 WL 2309592, at *7 (S.D.N.Y. Aug.10, 2006) (citing cases).

### 4. *Varela's Grievance and Appeals*

On April 5, 2004, Varela submitted a grievance concerning the March 25, 2004 assault. Pl. 56.1 ¶ 1; *see also* Grievance (reproduced as Ex. 1 to Pl. 56. 1), at 7–10. The grievance—three and a half single-spaced pages in length—details an initial assault by defendant Demmon which occurred while Varela attempted to make a pre-scheduled call to his family on March 25, 2004. *See* Grievance at 7. Varela asserted that Demmon and Hahn both assaulted him. *Id.* at 7–8. He also detailed the presence of other unidentified officers—"there were about 5 to 6 officers on top of me,"—who eventually picked him up "by [his] wrist[s]," and escorted him away from the scene. *Id.* at 8. On the way to the clinic, he stated that "Sergeant Lapier confronted [him] and slapped [him] in the face and head," and "[t]he officers escorting [him] proceeded to knee me in the ribs" and "an officer ... posted on building 2 gate ran down and started punching [his] stomach about ten times." *Id.* Varela then detailed his injuries stemming from the incident. *Id.* at 9.

The IGRC recommended that his grievance be "pass[ed] thr[ough]" to the Superintendent, *id.* at 3, and on May 18, 2004, Superintendent Phillips denied Varela's grievance. *See id.* at 4. After interviewing

at least one witness and reviewing statements from the officers implicated, Superintendent Phillips concluded that "there is no substantiation of the allegations." *Id.* at 4. In response, Varela submitted an appeal statement on May 20, 2004. *Id.* The CORC denied Varela's appeal, stating that "[u]pon a full hearing of the facts and circumstances in the instant case, ... the issue of the complaint has been found to be without merit." *Id.* at 1.

### 5. *Discussion*

■ *a. Varela's Claims Against Demmon, Hahn and Lapier.* Defendants concede that Varela has exhausted his Eighth Amendment excessive force claim with respect to Demmon, Hahn, and Lapier. Def. Mem. at 5 n. 3. They argue, however, that Varela has not exhausted his First Amendment retaliation claims—both as to the assault and as to the filing of the false misbehavior report—against these defendants because the grievance fails to mention retaliation as a motive. *See* Def. Mem. at 6; Reply Mem. at 10.

In *Jones v. Bock,* the Supreme Court noted that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." 127 S.Ct. at 923. In New York, an inmate grievance must contain the following information:

> In addition to the grievant's name, department identification number, housing unit, program assignment, etc., the grievance should contain a concise, specific description of the problem and the action requested and indicate what actions the grievant has taken to resolve the complaint, i.e., specific persons/areas contacted and responses received.

N.Y.C.R.R. § 701.5(a)(2); *see also* DOCS Directive No. 4040 § V(A)(1) (Aug. 22, 2003), codified at 7 N.Y.C.R.R. § 701.6(g) (2007) (formerly codified at 7 N.Y.C.R.R. § 701.7[a], which was repealed and amended on June 28, 2006) (reproduced as Ex. 3 to Pl. 56.1). Interpreting these requirements, the Second Circuit has said that:

> if prison regulations do not prescribe any particular content for inmate grievances, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming.

*Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir.2004) (internal quotation and citation omitted).

With respect to the assault, Varela's grievance does not use the word "retaliation" in describing what occurred. But, fairly read, it does suggest that the assault occurred in response to Varela's prior complaint to Demmon's supervisors. The grievance states that Demmon said, on the day before the assault: "Since you like to cry to my superiors, I'm going to show you who the real boss around here is. Your time will come soon." Grievance at 7. The grievance then details the assault. *Id.* at 7–8. This description obviously suggests that Demmon instigated the assault in response to Varela's complaints. As such, the description "provide[d] enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." *Johnson,* 380 F.3d at 697; *accord Boomer v. DePerio,* 405 F.Supp.2d 259, 262–63 (W.D.N.Y.2005) (citing cases); *Turner v. Goord,* 376 F.Supp.2d 321, 324–25 (W.D.N.Y.2005). Accordingly, it satisfied the exhaustion requirement.

With respect to the misbehavior report, the grievance asks that DOCS "sanction these officers for filing falsify [sic] misbehavior reports" and attributes Demmon's report to an "unwritten policy" of Green Haven officers "to excessively harm/retaliate against an inmate and . . . cover-up misconduct performed by them." Grievance at 10. In light of this description, as well as the prior description of Demmon's statement just before the assault, the grievance was equally sufficient to alert prison officials to the nature of the Varela's claim with respect to the misbehavior report.

■ *b. Varela's Claims Against Defendants Mrzyglod, Wahlquist or Riccione.* Defendants argue that Varela has not exhausted his claim against Mrzyglod, Wahlquist and Riccione—the officers alleged to have committed the second assault—because their names were not contained in the April 5, 2004 grievance Varela filed. Def. Mem. at 8–9; Reply Mem. at 9. Varela's grievance described this assault but did not name the officers, instead referring only to "[t]he officers escorting me" and "an officer which was posted on building 2 gate." Grievance at 8. It appears that defendants believe that absent a "physical description" of the unknown officers' "physical features," the grievance is "vague," fails to state a "specific description of the problem," and makes "[i]t . . . impossible for [the] prison system to be able to resolve [the] problem." Reply Mem. at 9.

This argument is without merit. In *Jones v. Bock*, the Supreme Court held that "nothing in the [PLRA] imposes a 'name all defendants' requirement," 127 S.Ct. at 922, and thus, "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Id.* at 923. Like the prison grievance policy reviewed in *Jones v. Bock*, New York's "procedures make no mention of naming particular officials . . . [as] a prerequisite to proper exhaustion." *Id.* All that is necessary is that the grievance contain a "concise, specific description of the problem." 7 N.Y.C.R.R. § 701.5(a)(2). Defendants have not disputed that officers Mrzyglod, Wahlquist and Riccione were in fact the guards "escorting [Varela]" and the one at "building 2 gate." *See* Pl. 56.1 ¶ 8. Thus, defendants' motion for summary judgment with regard to whether Varela exhausted his Eighth Amendment excessive force claim against these three defendants must be denied.[1]

### C. *Defendants' Motion to Dismiss for Failure to State a Claim*

Defendants also seek to dismiss Varela's retaliation claims on the ground that his allegations fail to state a claim.

#### 1. *Law Governing Motions to Dismiss*

In resolving a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g., Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 216 (2d Cir.2004). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In making this determination, "[t]he issue is

---

1. Varela in his brief states that "plaintiff is . . . entitled to summary judgment on this . . . claim." Pl. Mem. at 19. As Varela has not submitted a cross-motion for summary judgment, however, the Court considers only the defendants' motion on this point.

not whether a plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support his or her claims." *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995), *cert. denied,* 519 U.S. 808, 117 S.Ct. 50, 136 L.Ed.2d 14 (1996). A complaint need only include a short and plain statement of the claim, *see* Fed.R.Civ.P. 8(a) (2), and "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz,* 534 U.S. at 512, 122 S.Ct. 992 (quoting *Conley,* 355 U.S. at 47, 78 S.Ct. 99). Nonetheless, the complaint's allegations must be "sufficient to establish liability." *Amron v. Morgan Stanley Inv. Advisors Inc.,* 464 F.3d 338, 344 (2d Cir.2006).

### 2. *Section 1983*

■ Varela has brought this action under 42 U.S.C. § 1983. *See* Am. Compl. ¶ 1. To assert a claim under section 1983, a plaintiff must show that he has been deprived of a right secured by the Constitution or federal law by a defendant acting under the color of state law. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Section 1983 does not grant any substantive rights but rather "provides only a procedure for redress for the deprivation of rights established elsewhere," such as in the Constitution or federal statutes. *See Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted), *cert. denied,* 512 U.S. 1240, 114 S.Ct. 2749, 129 L.Ed.2d 867 (1994). Because the defendants do not dispute that their actions were under the color of state law, the issue presented is whether Varela has alleged any violation of a constitutional right. Varela alleges that his First Amendment rights were violated when he was retaliated against based on both the March 25, 2004 assault and the filing of the misbehavior report.

### 3. *Law Governing First Amendment Retaliation Claims*

■ The First Amendment protects prisoners from retaliation for engaging in protected speech, including submitting grievances regarding prison conditions. *See Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996) ("[R]etaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983.") (citing *Franco v. Kelly,* 854 F.2d 584, 589 (2d Cir.1988)). A prisoner asserting a retaliation claim must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004) (citation omitted).

In the prison context, the Second Circuit has recognized "the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated." *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995) (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983)). Thus, courts "examine prisoners' claims of retaliation with skepticism and particular care." *Colon,* 58 F.3d at 872.

### 4. *Discussion*

■ Defendants concede that Varela's allegations, if true, are sufficient to meet the "adverse action" element of a retaliation claim. Def. Mem. at 12. They dispute whether Varela's allegations show that Varela engaged in constitutionally protected speech and, if so, whether that speech was causally connected to the retaliatory acts.

*a. Constitutionally Protected Activity.* In relevant part, Varela's amended complaint states that he "complained to the sergeant that Defendant Demmon had not let him shower on March 24." Am. Compl. ¶ 13. On March 25, defendant Demmon "confronted Varela about Varela's complaint to the sergeant," indicating that he "was upset that an inmate complaint had caused a superior to admonish him." *Id.* ¶ 16. Demmon "threatened revenge" and shortly thereafter, Varela alleges, Demmon and Hahn assaulted him. *Id.* ¶¶ 16, 18–23.

Defendants contend that Varela's allegation on this point must fail because it is "conclusory" and does "not establish with sufficient detail that this complaint was constitutionally protected activity." Reply Mem. at 4; *see also* Def. Mem. at 11–12. Specifically, defendants claim that because "[p]laintiff has not at a minimum, identified the sergeant to whom he made this alleged complaint," Def. Mem. at 12, the allegation is infirm. Additionally, defendants assert that Varela had no constitutional right to take a shower and an "isolated complaint that he was not permitted to take one shower on a specific date and at a specific time, without more, does not amount to constitutionally protected speech." *Id.*

The argument that the complaint lacks "sufficient detail" or fails to "identif[y] the sergeant" is without merit because there is no requirement that a complaint contain such details. In *Swierkiewicz,* 534 U.S. at 514, 122 S.Ct. 992, the Supreme Court reaffirmed the "simplified pleading system" set forth in the Federal Rules of Civil Procedure, stating that:

> Federal Rule of Civil Procedure 8(a)(2), ... provides that a complaint must include only a short and plain statement of the claim showing that the pleader is entitled to relief. Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.

*Id.* at 512, 122 S.Ct. 992 (internal quotation and citation omitted); *Phelps v. Kapnolas,* 308 F.3d 180, 187 n. 6 (2d Cir.2002) (noting the application of *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), to the pleading standard for section 1983 cases).

Applying this standard, Varela's complaint "easily satisfies the requirements of Rule 8(a) because it gives [defendants Demmon and Hahn] fair notice of the basis for [Varela's] claims." *Swierkiewicz,* at 514, 122 S.Ct. 992. Varela alleged that he was assaulted and written up for assault on staff because he complained to Demmon's superior. Am. Compl. ¶¶ 23, 32. His amended complaint detailed the events surrounding his verbal complaint to the sergeant and the subsequent assault and corresponding misbehavior report. Moreover, it provided the substance of Varela's verbal complaint as well as relevant dates. That it did not provide the name of the sergeant is of no consequence since the complaint gave defendants "fair notice of what [Varela's] claims are and the grounds upon which they rest." *Swierkiewicz,* 534 U.S. at 514, 122 S.Ct. 992 (citing *Conley,* 355 U.S. at 47, 78 S.Ct. 99).

As noted, defendants also argue that an "isolated complaint that he was not permitted to take one shower on a specific date and at a specific time, without more, does not amount to constitutionally protected speech." Def. Mem. at 12. But the support for this assertion is their contention that a prisoner is not constitutionally entitled to a shower. Def. Mem. at 12. This

is a non sequitur. The act of making a grievance—not the underlying subject—is the basis for Varela's retaliation claim. In other words, the making of a grievance is itself the constitutionally protected speech. *See, e.g., Graham,* 89 F.3d at 80 ("filing of a grievance ... is constitutionally protected"). The subject matter of the grievance—including whether it alleges the violation of any constitutional right—is thus irrelevant.[2]

■■ *b. Causal Connection.* Defendants argue that "[t]here was no causal connection between plaintiff's activity and defendant's [sic] activity." Def. Mem. at 13. This argument too is without merit. To satisfy the causation requirement of a section 1983 retaliation claim, a plaintiff's allegations must be "sufficient to support the inference that the speech played a substantial part in the adverse action." *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir.2001) (internal quotation marks and citation omitted), *overruled on other grounds, Swierkiewicz,* 534 U.S. at 506, 122 S.Ct. 992. The complaint easily satisfies this standard. Varela's amended complaint alleges that Varela complained to Demmon's superior, that Demmon confronted Varela with the complaint, that he was "upset that an inmate complaint had caused a superior to admonish him," and that he "threatened revenge." Am. Compl. ¶ 16. Later that evening, officers assaulted Varela, and Demmon subsequently filed a misbehavior report for assault on staff. Varela's allegations are

obviously "sufficient to support the inference that the speech played a substantial part in the adverse action." *Dawes,* 239 F.3d at 492; *see also, e.g., Morales v. Mackalm,* 278 F.3d 126, 131 (2d Cir.) (short time frame between grievance and retaliatory action, along with allegation of the defendant's involvement, sufficed to support an inference of a retaliatory motive), *abrogated on other grounds, Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

### D. *Qualified Immunity*

■■ The doctrine of qualified immunity precludes civil liability where either prison officials performing discretionary functions "did not violate clearly established law," or "it was objectively reasonable for the defendant[s] to believe that [their] action[s] did not violate such law." *Anderson v. Recore,* 317 F.3d 194, 197 (2d Cir.2003) (citations and internal quotations omitted); *accord Ford v. McGinnis,* 352 F.3d 582, 596 (2d Cir.2003) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); *see also Hope v. Pelzer,* 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (qualified immunity ensures that defendants have "fair notice" that their conduct is unlawful before being exposed to liability and that "[f]or a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right' ") (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523

---

**2.** Because defendants' motion does not contend that verbal complaints cannot constitute constitutionally protected activity, it is unnecessary to reach this question. The Court notes that some case law indicates that a prisoner's oral complaints to prison guards may provide the basis for a retaliation claim under § 1983. *See Smith v. Woods,* 2006 WL 1133247, at *10 (N.D.N.Y. Apr. 24, 2006), *aff'd,* 2007 WL 756410, at *1 (2d Cir. Mar.12,

2007); *Gill v. Riddick,* 2005 WL 755745, at *10 (N.D.N.Y. Mar.31, 2005) (citing cases); *Gaston v. Coughlin,* 81 F.Supp.2d 381, 386 (N.D.N.Y.1999); *Malik'El v. New York State Dept. of Corr. Servs.,* 1998 WL 187459, at *4 (N.D.N.Y. Apr.8, 1998); *but see Garrido v. Coughlin,* 716 F.Supp. 98, 101 (S.D.N.Y.1989) ("verbal confrontation" not protected activity).

(1987)). A qualified immunity defense may be asserted as part of a motion under Fed.R.Civ.P. 12(b)(6) if it is based on facts appearing on the face of the complaint, though defendants asserting the defense at this stage face a "formidable hurdle." *McKenna v. Wright,* 386 F.3d 432, 434–35 (2d Cir.2004).

While defendants' memorandum of law contains a brief section asserting that the doctrine of qualified immunity shields Demmon from liability on Varela's First Amendment claim based on the misbehavior report, they argue the applicability of the qualified immunity defense only in the vaguest and most general terms. Def. Mem. at 15–16. Significantly, they offer no explanation either as to what specific right was not "clearly established" or as to why it would not have been clear to a reasonable officer in Demmon's position that he would violate Varela's rights by issuing a false misbehavior report in retaliation for Varela's constitutionally protected speech. Accordingly, there is no basis on which conclude that Demmon is entitled to qualified immunity.

*Conclusion*

For the foregoing reasons, defendants' motion to dismiss (Docket # 50) should be denied.

**PROCEDURE FOR FILING OBJEC-
TIONS TO THIS REPORT AND
RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections. *See also* Fed.R.Civ.P. 6(a), (e). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Sidney H. Stein, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Stein. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

Dated May 17, 2007.