**Edwin CRUZ, Plaintiff,**

v.

**Brian FISCHER, Thomas Griffin, M. Sheehan, Correctional Officer S. Waters, C. Clark, John Does 1–10, and John Does 1–20, Defendants.**

**6:13–CV–6131 EAW**

United States District Court,
W.D. New York.

Signed March 30, 2016

Edwin Cruz, Stormville, NY, pro se.

Bernard F. Sheehan, NYS Attorney General's Office, Department of Law, Rochester, NY, for Defendants.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, United States District Judge

### *INTRODUCTION*

*Pro se* Plaintiff, an inmate at Southport Correctional Facility ("SCF"), brought this action against the State of New York and Department of Corrections and Community Supervision ("DOCCS") officials pursu-

ant to 42 U.S.C. § 1983, alleging violations of the Eighth Amendment and New York State law. (Dkt. 1). On June 6, 2014, the Court granted in part and denied in part Defendants' motion to dismiss Plaintiff's complaint, and dismissed Plaintiff's claims against the State of New York and defendant Brian Fischer in his official capacity, and Plaintiff's claims for assault and battery and for negligent hiring, training, and retention. (Dkt. 28). Presently before the Court is Defendants' motion for summary judgment, filed on April 17, 2015, seeking dismissal of Plaintiff's remaining claims. (Dkt. 77). For the following reasons, Defendants' motion is granted.

## BACKGROUND

Plaintiff alleges that, on September 17, 2011, he was housed in the Special Housing Unit ("SHU") at SCF. (Dkt. 1 at ¶¶ 1, 19–20), At approximately 7:40 a.m. on that day, Plaintiff was preparing for recreation in B-block and had mechanical restraints applied to his wrists. (*Id.* at ¶ 20; *see also* Dkt 77–4 at 41:4–8). After Plaintiff was handcuffed and shackled, Correction Officer S. Waters ("Officer Waters") allegedly "forcefully struck" Plaintiff in the head from behind, causing Plaintiff to collapse to the ground. (Dkt. I at ¶ 21; *see also* Dkt. 77–4 at 41:8–11). While Plaintiff was lying on the ground, Officer Waters and Corrections Officer C. Clark ("Officer Clark") allegedly kicked Plaintiff in the ribs, face, head, back, legs, arms and torso. (Dkt. 1 at ¶ 21; *see also* Dkt. 77–4 at 41:11–43:2).

Plaintiff testified that other officers came to his cell and began assaulting him with batons, and that a sergeant videotaped the assault. (Dkt. 77–4 at 41:11–12, 15–18). Following the assault, Plaintiff testified that the officers pulled him "like a dog" and threw him into the inmate showers. (*Id.* at 42:9–12). Plaintiff testified that the officers took him "out to the front" because he was unable to stand on his own and took photos of him and cut off his clothes. (*Id.* at 42:19–43:4).

Plaintiff alleges that he vomited three times during an "examination" after the beating and suffered visible injuries to his head, face, and back. (Dkt. 1 at ¶ 22; *see also* Dkt. 77–4 at 50:6–9). Plaintiff was transferred via ambulance to Arnot Ogden Medical Emergency where he was diagnosed with a facial contusion, head injury, bruised ribs, facial swelling, and abrasions and bruises on his back, head, and body. (Dkt. 1 at ¶ 22; *see also* Dkt. 77–4 at 52:24–53:1). Plaintiff alleges that he continues to suffer physical and emotional injuries as a result of the assault. (*Id.* at ¶ 23; *see also* Dkt. 77–4 at 50:6–9 (Plaintiff suffered from mental health issues and broken ribs as a result of the September 17, 2011 attack)). Following the incident, Plaintiff received a misbehavior report, and was found guilty of all charges at the disciplinary hearing, (*Id.* at 55:23–56:5).

Plaintiff alleges that prior to the September 17, 2011 incident, he sent letters to the supervisory defendants informing them of his concerns regarding Officer Waters and "Officer Roberts," and the history of violence perpetrated against inmates by corrections officers. (Dkt. 1 at ¶ 18; Dkt. 77–4 at 63:4–9, 20–25). Plaintiff testified that he wrote to the supervisory defendants informing them that "the abuse that they had with other inmates, assaulting them, killing inmates and telling family members that the inmate died by himself in his cell." (Dkt. 77–4 at 63:15–19). Plaintiff maintains that the supervisory defendants did not "do their job" and, as a result, he was assaulted and injured. (*Id.* at 64:19–21).

## PROCEDURAL HISTORY

Plaintiff filed his complaint on January 28, 2013, alleging violations against the State of New York; former Commissioner

of the New York State DOCCS, Brian Fischer, in his individual and official capacity; former Superintendent of SCF, Thomas Griffin, in his individual capacity; former Deputy Superintendent of Security at SCF, M. Sheahan, in his individual capacity; Officer Waters, in his individual capacity; and Officer Clark, in his individual capacity. (*Id.* at ¶¶ 9–14).[1]

Defendants filed a motion to dismiss the complaint in part on December 3, 2013. (Dkt. 14). The case was transferred to the undersigned on February 18, 2014. (Dkt. 26). On June 6, 2014, the Court granted in part and denied in part Defendants' motion to dismiss. (Dkt. 28). The Court dismissed Plaintiff's claims against the State of New York and Brian Fischer in his official capacity, and Plaintiff's claims for assault and battery and for negligent hiring, training, and retention. The case was referred to the Honorable Johnathan W. Feldman, United States Magistrate Judge, for discovery, on June 9, 2014 (Dkt. 29), who set a dispositive motion deadline of April 17, 2015 (Dkt. 43). On April 17, 2015, Defendants filed a motion for summary judgment to dismiss Plaintiffs remaining causes of action for excessive use of force against Officers Waters and Clark and Plaintiff's claims against the supervisory defendants Fischer, Griffin, and Sheahan. (Dkt. 77). In support of their motion, Defendants submit an affidavit from Jeffrey Hale, the assistant director of the inmate grievance program, and attached exhibits (Dkt. 77–3), and Plaintiffs deposition transcript and exhibits from the deposition (Dkt. 77–4). Plaintiff responded to the motion on May 18, 2015 (Dkt. 81), and Defendants replied on June 2, 2015 (Dkt. 82).

---

1. Plaintiff also names 30 "John Does" as defendants sued in their individual capacities,

## DISCUSSION

### I. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Once the moving party has met its burden, the opposing party " 'must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*' " *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir.2002) (quoting *Matsushita Elec.,* 475 U.S. at 586–87, 106 S.Ct. 1348) (emphasis in original). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

Although a *pro se* litigant's pleadings should be liberally construed "to raise the strongest arguments that they suggest," *Fulton v. Goord,* 591 F.3d 37, 43 (2d Cir. 2009) (internal quotation and citation omitted), "proceeding pro se does not otherwise relieve [a litigant] from the usual

but does not make any allegations against them. (Dkt. 1 at 1).

requirements of summary judgment ....," *see Toliver v. City of N.Y.*, No. 10 Civ. 3165(PAC)(JCF), 2013 U.S. Dist. LEXIS 186431, at *10 (S.D.N.Y. Dec. 13, 2013) (alteration in original) (internal quotations and citation omitted). *See also Gittens v. Garlocks Sealing Techs.*, 19 F.Supp.2d 104, 110 (W.D.N.Y.1998) (although a court should grant "significant liberality in how *pro se* pleadings are construed ... proceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment.").

This district's Local Rules of Civil Procedure require that a party moving for summary judgment file a Statement of Undisputed Facts accompanied by citations to admissible evidence. *See* L.R. Civ. P. 56(a)(1). The rule also requires a party opposing summary judgment to file a statement admitting or contesting the moving party's statement, and provides that an opposing party's failure to contest a statement renders that statement admitted. *Id.* at (a)(2). Here, Plaintiff has failed to submit an opposing statement, and therefore the Court could deem Defendants' statements admitted by Plaintiff. "A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules .... [and] it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file [a Local Civil Rule 56.1] statement." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir.2001) (internal quotations and citations omitted). Considering Plaintiffs *pro se* status, the Court in its discretion will not reject Plaintiff's submission. Rather, the Court will conduct an independent review of the record to determine if Plaintiff s recitation of events conflicts with those statements contained in Defendants' Statement of Undisputed Facts. *See Daley v. Cablevision Sys. Corp.*, No. 12–cv–6316 (NSR), 2016 WL 880203, at *1 (S.D.N.Y. Mar. 7, 2016).

## II. Plaintiff's Claims Against the "John Doe" Officers

■ Plaintiff brings claims against "John Does 1–10" and "John Does 1–20." (Dkt. 1). Plaintiff's complaint does not contain any allegations against these John Does, but the Court presumes that Plaintiff is referring to other officers participating in the alleged assault on September 17,2011. (*See* Dkt. 77–4 at 41:11–12; 45:12–48:10).

■ "Courts typically refrain from dismissing suits against 'John Doe' defendants 'until the plaintiff has had some opportunity for discovery to learn the identities of responsible officials' ...." *Kearse v. Lincoln Hosp.*, No. 07 Civ. 4730(PAC)(JCF), 2009 WL 1706554, at *2 (S.D.N.Y. June 17, 2009) (quoting *Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir.1998)). However, a plaintiff must identify any John Doe individuals prior to the three-year statute of limitations period, or those defendants may be dismissed. *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir.1999) ("[i]t is familiar law that 'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued.") (internal quotations and citation omitted); *Cuellar v. Love*, No. 11–cv–3632 (NSR), 2014 WL 1486458, at *5 (S.D.N.Y. Apr. 11, 2014) ("Claims under 42 U.S.C. § 1983 asserted in New York based on personal injuries, such as Plaintiff's claims premised on excessive force, are subject to a three-year statute of limitations.").

John Doe substitutions " 'may only be accomplished when all of the specifications of Fed. R. Civ. P. 15(c) are met.' " *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir.2013) (quoting *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1075 (2d Cir.1993)). "This Circuit has interpreted the rule to preclude

relation back for Amended Complaints that add new defendants, where the newly added defendants were not named originally because the plaintiff did not know their identities . . . . [a]lthough 'Rule 15(c) explicitly allows the relation back of an amendment due to a "mistake" concerning the identity of the parties . . . [,] the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake.'" *Id.* (*quoting Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir.1995)) (second alternation in original). *See also Barrow*, 66 F.3d at 470 (even when a suit is brought by *pro se* litigant, "an amended complaint adding new defendants [cannot] relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities."). Here, Plaintiff fails to meet the requirements of Fed. R. Civ. P. 15(c)(1)(C) as the purported lack of knowledge of a John Doe defendant's name does not constitute a "mistake of identity."

An amended pleading asserting § 1983 claims also may relate back under Fed. R. Civ. P. 15(c)(1)(A), when " 'the law that provides the applicable statute of limitations allows relation back.'" *Hogan*, 738 F.3d at 518 (quoting Fed. R. Civ. P. 15(c)(1)(A)). New York law, which provides the three-year statute of limitations applicable in § 1983 cases, provides that a complaint may relate back if the party seeking the amendment meets two requirements: "First, the party must exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name. Second, the party must describe the John Doe party in such form as will fairly apprise the party that [he] is the intended defendant." *Id.* at 519 (internal quotations and citations omitted) (alteration in original). Here, Plaintiff meets neither of these requirements. Plaintiff has not proposed substituting one of the John Doe defendants with a named

defendant, and there is no evidence that Plaintiff diligently pursued the identities of any John Doe defendants. Further, the complaint does not adequately describe the John Doe defendants such that they would be put on notice of Plaintiff's claims against them. Indeed, Plaintiff's complaint does not contain any allegations against the John Doe defendants.

Plaintiff has not identified or served any John Doe defendants. The events described in the complaint occurred in September 2011, and the statute of limitations for claims asserted pursuant to 42 U.S.C. § 1983 is three years. Therefore, Plaintiff's claims against the John Doe defendants would now be untimely. *See Moody v. Town of Greenburgh*, No. 09–Civ–6579 (GAY), 2012 WL 1174754, at *2 (S.D.N.Y. Apr. 9, 2012) (dismissing on summary judgment the plaintiff's claims against John Doe defendants 1–4, because he failed to serve those defendants and the statute of limitations had run on those claims at the time of the motion); *see also Aslanidis*, 7 F.3d at 1075.

Plaintiff had adequate time to identify any John Doe defendants during discovery, and was afforded the opportunity to demand and receive discovery responses from Defendants. *See* Dkt. 9 (Court directing Defendants to produce information regarding the identities of the John Doe defendants); Dkt. 43 at ¶ 2 (motions to join parties and to amend pleadings due by January 16, 2015); Dkt. 45, 58–59 (Defendant's Rule 26 disclosures). On December 3, 2013, Plaintiff filed a motion to amend his complaint because it incorrectly identified some defendants, and to "enhance the complaint in the interest of justice." (Dkt. 13). Plaintiff's motion did not include the names of the proposed additional defendants. Judge Siragusa granted Plaintiff's motion on December 12, 2013, and permitted him to file an amendment as of right

by February 3, 2014. (Dkt. 18). Plaintiff never filed an amended complaint naming additional defendants, despite the fact that he was afforded the opportunity to do so. Accordingly, the John Doe defendants are dismissed.

### III. Plaintiff's Claims Against the Supervisory Defendants

■ Plaintiff brings claims against supervisory defendants Fischer, Griffin, and Sheehan for "permitting, tolerating and sanctioning a persistent and widespread policy, practice, and custom pursuant to which plaintiff was subjected to a brutal beating . . ." (Dkt. 1 at ¶¶ 29–33). Defendants argue that these claims must be dismissed because (1) Plaintiff has not shown any policy or custom of abuse; and (2) Plaintiff has failed to show deliberate indifference by the supervisory defendants. (Dkt. 77–5 at 7; Dkt. 82 at 6–9).

■ In order to bring a § 1983 claim against a prison official, "a plaintiff must allege that individual's personal involvement. . . ." *Ippolito v. Goord,* No. 05–CV–6683 (MAT), 2012 WL 4210125, at *7 (W.D.N.Y. Sept. 19, 2012). Furthermore, "supervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior.*" *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003). Supervisory officials such as defendants Fischer, Griffin, and Sheehan may be found personally involved in a constitutional violation in the following ways: "(1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts

were occurring." *Ippolito,* 2012 WL 4210125, at *7 (internal quotations and citation omitted).

Plaintiff alleges in his complaint that defendants Fischer, Griffin, and Sheehan are liable for his purported injuries because they were aware of violence perpetrated by corrections officers against inmates, and allowed these actions to persist despite this knowledge, thereby fostering a policy, practice or custom leading to Plaintiff's injury. (*See* Dkt. 1 at ¶¶ 10–12, 15–18).

■ Notwithstanding the allegations in the complaint, there is no evidence in the record indicating that the supervisory defendants fostered a policy, practice or custom by which officers were permitted to abuse or otherwise harm inmates. Rather, Plaintiff offers conclusory, unsupported statements in his complaint and in his memorandum of law which are insufficient to oppose Defendants' motion for summary judgment. Indeed, Plaintiff conceded at his deposition that he "[didn't] have any evidence" that there was a history of correctional institutions harming or killing inmates. (Dkt. 77–4 at 68:7–19). Plaintiff testified that he did not himself observe such a policy, but rather that he heard that such a practice exists from other inmates. (*Id.*).

■ Plaintiff also alleges that the supervisory defendants were aware and failed to prevent corrections officer violence against inmates (including himself). (Dkt. 1 at ¶¶ 15–18; Dkt. 81 at 6; Dkt. 77–4 at 61–63). In support of this assertion, Plaintiff testified that he wrote several letters to the supervisory defendants and other state officials informing them that he had been targeted and abused by corrections officers. (*See* Dkt. 77–4 at 62:18–63:17 (Plaintiff sent letters to Deputy Superintendent, Superintendent, Governor, and Commissioner of prisons before the September 17,

2011 incident, and all of the letters had "substantially the same" information, including that Officer Dillon made Plaintiff feel unsafe, that inmates received dirty razors, and that other inmates had been assaulted and killed)). Several of Plaintiffs letters are attached as exhibits to Defendants' motion for summary judgment. (Dkt. 77–4 at 121, 123 (letters to superintendent dated August 15, 2011 and August 21, 2011); *id.* at 117 (letter to Norman Bezio dated September 18, 2011); *id.* at 116 (letter to Director of Special Housing Unit/Inmate Disciplinary Programs Albert Prack dated September 18, 2011); *id.* at 114 (letter to DOCCS Central Office dated September 7, 2011); *id.* at 113 (letter to Albert Prack dated September 7, 2011); *id.* at 111 (letter to Governor Andrew Cuomo dated September 7, 2011)).

Some of these letters were written by Plaintiff after the incident in question and cannot be used as evidence that the supervisory defendants somehow knew of abusive behavior by inmates before the September 17, 2011 incident. A majority of the letters include allegations that Plaintiff was harassed by correction officers Dillon and Robinson, neither of whom are referenced as being involved in the incident at issue in the complaint. The two remaining letters are requests by Plaintiff that he be provided with the proper shorts for recreation. This evidence does not raise a genuine issue of material fact that the supervisory defendants were aware that Plaintiff was in danger of being harmed by Officers Waters and Clark.

Plaintiff argues in his motion papers that had he been given an attorney and permitted to obtain certain unredacted discovery, he would have been able to better articulate his claim that the supervisory defendants maintained a custom, practice, or policy of violence against inmates. (Dkt. 81 at 5, 8–9). Plaintiff previously filed motions for appointment of counsel on May 22, 2014, and June 23, 2014 (Dkt. 27 & 32), which were briefed by the parties (Dkt. 31, 40–42, 44, 50–51) and ultimately denied by Judge Feldman on March 23, 2015 (Dkt 69). Plaintiff filed a motion for reconsideration of Judge Feldman's Order on April 13, 2015 (Dkt. 75), which was briefed by the parties (Dkt. 79 & Dkt. 80) and denied on September 18, 2015. (Dkt. 83). The Court has reviewed Judge Feldman's decisions on the appointment of counsel issue and agrees with the conclusion that Plaintiff's motions for appointment of counsel should have been denied. Plaintiff may not use the denial of his request for appointment of counsel as a reason for the Court to deny Defendants' properly supported summary judgment motion. Further, the Court has reviewed Judge Feldman's discovery orders (Dkt. 54 & 83), and it appears that Plaintiff has obtained any discovery to which he is entitled. (*See* Dkt. 54 ("After reviewing the redacted documents, the Court finds that these updated redactions address both plaintiff's need for information relevant to his claim and defendants' need for the safety of witness and DOCCS staff."); Dkt. 58 & Dkt. 59). Accordingly, there is no genuine issue of material fact justifying the denial of summary judgment in favor of the supervisory defendants.

## IV. Administrative Exhaustion

It is well-established that "[p]risoners in DOCCS custody must complete a three-step inmate grievance procedure, including two levels of appeals, to exhaust their administrative remedies." *Weidman v. Wilcox,* No. 6:12–CV–6524 (MAT), 2014 WL 1056416, at *2 (W.D.N.Y. Mar, 17, 2014) (citations omitted). These procedures must be exhausted prior to commencing a § 1983 action. *Goodwin v. Burge,* No. 08–CV–00660A(F), 2011 WL 2117595, at *10 (W.D.N.Y. Mar. 7, 2011), *adopted,* 2011 WL 2119324 (W.D.N.Y. May 27, 2011).

"The Court cannot consider any allegation by [the plaintiff] made in his complaints or papers that does not appear in ... [a] grievance." *Sloane v. Mazzuca*, No. 04 CV 8266(KMK), 2006 WL 3096031, at *9 (S.D.N.Y. Oct. 31, 2006).

Plaintiff alleges that the incident at Southport occurred on September 17, 2011. (Dkt. 1 at ¶¶ 1, 19–20; Dkt. 77–4 at 40:22–23; 54:1–2; 56:13–15). At his deposition, Plaintiff testified that he did file a grievance relating to the September 17, 2011 incident. (Dkt. 77–4 at 59:23–25). Plaintiff testified that he does not remember when the grievance was filed, but that "[he] did submit one and [he] also wrote to the administration ... in charge of the prisons in Albany and the Superintendent in Southport to let them know what I was saying was the truth...." (*Id.* at 60:1–6). Plaintiff also testified that he had a copy of the grievance dated September 19, 2011, that the grievance and his appeal were denied, and that the date of his appeal was September 17, 2011. (*Id.* at 60:10–61:11).

In support of their motion, Defendants have submitted the affidavit of Jeffrey Hale, Assistant Director of the Inmate Grievance Program for DOCCS, with attached exhibits (Dkt. 77–3). Mr. Hale's affidavit states that he has reviewed the records of all grievances filed by Plaintiff, and that there is no evidence that Plaintiff filed or appealed any such grievance relating to the September 17, 2011 incident. (*Id.* at 10–11). Attached to Mr. Hale's affidavit as Exhibit B is a printout of all grievances filed by Plaintiff at SCF as of November 15, 2013. (*Id.* at 21–23). The Court has conducted its own independent review of Exhibit B, and agrees with Defendants that there is no evidence that Plaintiff filed a grievance relating to the alleged September 17, 2011 attack by Defendants. The grievances on record include (1) "Kicked By CO," filed February 16, 2011; (2) "Nurse Refused To Let Me See Doctor," filed August 30, 2011; (3) "Threats And Racial Remarks By CO," filed on September 8, 2011; and (4) "Request To See Doctor," filed on March 10, 2010. (*Id.* at 23; *see also* Dkt. 77–4 at 105 (grievances included "Needs Glasses," "Wants Medical Records," "Infection In Toenail," "Alleges Threats by Officer" on 9/8/2011, and "Medical Issues/Recoded 9/22/11")).[2]

In response to Defendants' motion, Plaintiff has failed to submit evidence supporting his claim that he filed a grievance relating to the September 17, 2011 incident, such as the grievance complaint, the ruling on the grievance, or documents related to any appeal taken from the grievance. Rather, Plaintiff submits grievance no. SPT–52202–11, entitled "alleged threats by officer," filed on September 8, 2011, nine days before the incident in question. (Dkt. 81 at 12). Plaintiff also submits grievance no. SPT–52153–11 entitled "nurse refused to let me see doctor," dated August 30, 2011, 18 days before the incident in question. (*Id.* at 15). This evidence, while not relevant to the incident in question, does show that Plaintiff was aware of the grievance process and exhaustion requirements. *See also* Dkt. 77–4

---

2. It appears that Plaintiff wrote a letter to Albert Prack informing him that he was harassed by officers on September 17, 2011. (Dkt. 77–4 at 119). Mr. Prack responded to Plaintiff's letter and advised that allegations of staff misconduct should be directed to facility officials though the established grievance mechanism, and forwarded Plaintiff's letter to the Superintendent. (*Id.*). There is no further evidence in the record that Plaintiff pursued a grievance concerning the September 17, 2011 incident, and Plaintiff appears to now concede that he never pursued any such grievance because of "exigent circumstances." (Dkt. 81 at 8). As discussed further below in this Decision and Order, Plaintiff's allegations in this regard are insufficient to justify his failure to exhaust.

at 33:10–39:23 (discussing various grievances filed by Plaintiff prior to September 17, 2011). Further, even if Plaintiff had evidence that he filed a grievance relating to the September 17, 2011 incident, Plaintiff lacks evidence that he appealed his grievance to the two levels of appeals. *See Cruz v. Lee*, No. 14 cv 4870(NSR)(JCM), 2016 WL 1060330, at *3 (S.D.N.Y. Mar. 15, 2016) ("A plaintiff *must* invoke all available administrative mechanisms, including appeals, 'through the highest level for each claim.' ") (quoting *Varela v. Demmon*, 491 F.Supp.2d 442, 447 (S.D.N.Y.2007)) (emphasis added).

In opposition to Defendants' motion, Plaintiff does not dispute that he failed to grieve the events allegedly occurring on September 17, 2011. Instead, he argues that he did not grieve his claim because he feared for his life. (*See* Dkt. 81 at 6 ("Plaintiff continuously put defendants on notice that the plaintiff feared for his safety and well being . . . . plaintiff ask[s] the court to remember, 'Even if a prisoner fails to exhaust his administrative remedies under [the] PLRA before filing a complaint in federal court, failure may be excused in certain circumstances.' "); *id.* at 8 ("plaintiff felt he was [in] imminent danger at the hands of the defendants, to which, the plaintiff felt there [were]. . . exigent circumstance[s] to file before this court.")). Plaintiff contends that he was sexually assaulted by staff and that his previous letters were ignored by the "higher ups," and

therefore he should be excused from exhausting his administrative remedies. (*Id.*).

■ The Second Circuit Court of Appeals recognizes three instances in which an inmate's failure to exhaust his administrative remedies may be excused. "The failure to exhaust administrative remedies may be excused or Plaintiff's claim may be deemed exhausted: (1) when administrative remedies are not available to the prisoner, (2) when the defendants waive the defense by failing to raise or preserve it, or acted in such a manner that they are estopped from raising it, or (3) when special circumstances exist to justify the prisoner's failure to comply with the exhaustion requirement." *Cruz*, 2016 WL 1060330, at *3 (quoting *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir.2004)).[3]

Plaintiff has not submitted any evidence which would lead the Court to conclude that exhaustion should be excused in this instance. In other words, Plaintiff has not submitted any credible evidence that he was justified in not filing a grievance because he feared for his life; because he was prevented from filing a grievance by Defendants; because he was threatened by prison officials not to file a grievance; or because prison regulations were unclear and Plaintiff was unsure of how or when to file a grievance. *See id.* at *4. Further, Plaintiff does not allege, nor is there any evidence in the record, that Plaintiff at-

---

**3.** There is an open question regarding the continuing vitality of portions of the *Hemphill* framework following the United States Supreme Court's decision in *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) that the PLRA requires "proper exhaustion." *See Amador v. Andrews*, 655 F.3d 89, 102 (2d Cir.2011) ("Subsequent decisions have questioned the continued viability of this framework following the Supreme Court's decision in [*Woodford*]."). The Second Circuit Court of Appeals has repeatedly declined to reach this issue. *See Richardson v. New York State Dep't of Corrs. & Cmty. Supervision Emps.*, No. 14–3365, 633 Fed.Appx. 816, 817 ——, 2016 WL 690981, at *1 (2d Cir. Feb. 22, 2016) ("While we have questioned the 'continued viability' of these [*Hemphill*] exceptions after *Woodford*, . . . there is no need to address that issue here. . . .")). Here, this issue also does not need to be resolved because even applying *Hemphill*, Plaintiff has failed to demonstrate a genuine issue of material fact as to whether his failure to exhaust is excused.

tempted to exhaust his administrative remedies but was unable to do so. Rather, Plaintiff's "exigent circumstances" argument appears to be a last-ditch effort by him to overcome Defendants' motion for summary judgment—indeed, Plaintiffs testimony at his deposition that he grieved the September 17, 2011 incident and that he was in possession of evidence of the same is inconsistent with his current position that he was excused from filing a grievance in the first place. The fact that Plaintiff adequately filed other grievances shortly before the incident in question indicates that he knew how to and could file a grievance.

Moreover, Plaintiff's letter to Mr. Prack dated October 4, 2011, which Mr. Prack forwarded to the Superintendent, is not a substitute for filing a grievance. "[L]etters to prison officials do not satisfy the exhaustion requirement of the PLRA where the inmate has failed to follow the established grievance procedures." *Harris v. Totten*, 244 F.Supp.2d 229, 233 (S.D.N.Y.2003), *abrogated on other grounds by Richardson v. Goord*, 347 F.3d 431 (2d Cir.2003) (collecting cases); *Scott v. Gardner*, 287 F.Supp.2d 477, 488 (S.D.N.Y.2003) ("Letters of complaint, regardless of the addressee, are not part of the grievance process and do not satisfy the exhaustion requirement."); *Powell v. Schriro*, No. 14 Civ. 6207(KPF), 2015 WL 7017516, at *8 (S.D.N.Y. Nov. 12, 2015) ("sending letters to persons outside the grievance process is insufficient to establish exhaustion because it is well settled that '[c]omplaints and communications made outside of formal grievance procedures do not satisfy the PLRA's exhaustion requirement.") (citations omitted); *Daniels v. Douglas*, No. 10–CV–885–HBS (Consent), 2015 WL 5009247, at *4 (W.D.N.Y. Aug. 21, 2015) (" 'District court decisions in this circuit have repeatedly held that complaint letters to the DOCS Commissioner or the facility Superinten-

dent do not satisfy the [Prison Litigation Reform Act]'s exhaustion requirements.' ") (quoting *Muhammad v. Pico*, No. 02 CIV. 1052 AJP, 2003 WL 21792158, at *8 (S.D.N.Y. Aug. 5, 2003)) (alteration in original). Nor does Plaintiff's writing to administrative officials excuse his filing under *Hemphill*. *See Timmons v. Schriro*, Nos. 14–CV–6606 RJS, 14–CV–6857 RJS, 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015) ("the law is well-settled that informal means of communicating and pursuing a grievance, even with senior prison officials, are not sufficient under the PLRA," and holding that plaintiffs' failure to exhaust was not excused by the *Hemphill* framework); *Salvatierra v. Connolly*, No. 09 Civ. 3722(SHS)(DF), 2012 WL 996944, at *4 (S.D.N.Y. Feb. 29, 2012) (plaintiffs letters to superintendent and deputy commissioner complaining of misconduct were insufficient to satisfy exhaustion requirement or to excuse him from having filed a grievance), *adopted*, 2012 WL 1003562 (S.D.N.Y. Mar. 26, 2012); *Grey v. Sparhawk*, No. 99 CIV. 9871 HB, 2000 WL 815916, at *2 (S.D.N.Y. June 23, 2000) (a complaint made directly to the Inspector General's office "does not serve to excuse [a] plaintiff from adhering to the available administrative procedures. To allow [a] plaintiff to bypass those procedures would obviate the purpose for which the procedures were enacted.").

As a result, even if Plaintiff could assert timely claims against the John Doe defendants, and even if the record contained evidence to support a claim against the supervisory defendants, summary judgment would still be warranted in favor of Defendants due to Plaintiff's failure to exhaust.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted,

and judgment is entered in favor of Defendants. The Clerk of Court is directed to close the case.

SO ORDERED.